Sidney STEWART, Samuel B. Thomas, Ricardo Richards, Baldwin Wilson, Glen Teixeira, Hector Cruz, Victor Rios, Titus Gay, Victor Lewis, Moise Caban and Theophilus Thomas, Plaintiffs;

Kenneth Foster, Proposed
Plaintiff-Intervenor,

v.

Bernard JAMES, Frank James, Vapour Investors Corporation, Bernard James d/b/a King's Palace, Defendants.

No. 78 C 2736.

United States District Court,
E. D. New York.

June 29, 1981.

Farmworker Project, Riverhead, N. Y. by Anthony Szczygiel, New York City, for plaintiff.

John N. Griggs, New York City, for defendants.

## MEMORANDUM ORDER

NEAHER, District Judge.

This action to recover damages for violations of the Farm Labor Contractor Registration Act, 7 U.S.C. § 2041 *et seq.* (1976) ("the Act"), the regulations thereunder, 29 C.F.R. § 40.1 *et seq.*, and other federal and State laws, is before the Court on three motions. First, the eleven main plaintiffs, who allege they are "migrant workers" and that defendants Bernard James, Frank James and Vapour Investors Corp. are "farm labor contractors" as the Act defines those terms, 7 U.S.C. § 2042(b), (g), have moved for partial summary judgment in their favor on nine of the claims arising from defendants' purported violations of the Act. Jurisdiction is based on 7 U.S.C.

§ 2050a(a). Second, they also seek a default judgment against defendant Frank James for his failure to appear for a court ordered deposition, or, in the alternative, an award of costs, including attorney's fees. Third, an additional party, Kenneth Foster, seeks leave to intervene in this action. For the reasons that follow, the motion for a default judgment against Frank James is granted, the motion to intervene is denied, and partial summary judgment in plaintiffs' favor is granted on the claims arising under the Act.

Before turning to the legal merits of the motions it will be helpful to set out the following facts. These have been drawn from plaintiffs' affidavits submitted in support of the motion for summary judgment, from defendants' responses to plaintiffs' requests for admissions, and from plaintiffs' uncontested statement of material facts pursuant to General Rule 9(g) of the Rules of this Court. None of these facts has been controverted by the single affidavit submitted by defendant Bernard James.

In the summer of 1977 Bernard James traveled to Winter Haven, Florida, and spoke with farm labor contractors based there. One of them informed James that he was registered as a farm labor contractor and had special authorization to transport and house migrant workers. James also was told that employment could be found for any workers James recruited. The Winter Haven farm labor contractor, or crew leader, offered James the use of a bus to transport workers from New York City to Florida.

After his return to Brooklyn, New York, Bernard James composed the following advertisement which was run in several New York newspapers in December 1977:

"MEN WANTED (100)

For jobs in Florida. Transportation and boarding provided. Earnings from $200–$350 a week for 6 months or more. For further information: (212) 462–8118."

The telephone number listed in the advertisement is that of "King's Palace," a nightclub operated by Bernard James at 366 Clarkson Avenue in Brooklyn. The Clark-

son Avenue address is also the principal place of business of Vapour Investors Corporation, a New York corporation whose sole incorporator, and sole officer and director since incorporation is Bernard James.

Over 200 persons, including plaintiffs and proposed intervenor, responded to the advertisement, and were directed to the King's Palace for complete information. With the exception of plaintiff Victor Rios, Bernard James had each plaintiff sign a form contract with Vapour Investors. Victor Rios signed an identical contract at the behest of one "Wilson." At no time did Bernard James or Wilson show any plaintiff any identification or certificate of registration as a farm labor contractor.

The contract purported to guarantee plaintiffs between $200 and $350 a week for picking citrus at a per box rate of $.45 for oranges and $.35 for grapefruit, with employment to last at least six months. The contract provided for several deductions from weekly pay, including mandatory amounts of $35 for food and lodging, and $25 for compulsory savings. It also listed a transportation charge of $300 that was to be paid through deductions from the weekly pay.

Transportation to Florida from Brooklyn was by a fifteen passenger van and by the school bus the Winter Haven crew leader had promised Bernard James in the summer. One of the drivers of the bus was Bernard's brother, Frank James, also called Glen Frank James. On arrival each plaintiff was put in a single room about 60 feet by 30 feet with approximately 14 other workers. The toilets, beds and bedding were old and filthy.

Bernard James had arranged for the housing of plaintiffs upon their arrival through the farm labor contractor he had spoken with in the summer. Through the same person he had arranged for each plaintiff to be employed at the groves. The Winter Haven crew leader, in housing plaintiffs and taking them to the groves during the days they stayed on that job, was acting as the agent of Bernard James and Vapour Investors.

At no time did any defendant register as a farm labor contractor with the Secretary of Labor. At no time did any defendant exhibit to any plaintiff a certificate of registration as a farm labor contractor. Nowhere on the housing premises in Florida was there posted in a conspicuous manner a written statement of the terms and conditions of occupancy. Nowhere at the employment site was there posted in a conspicuous manner a written statement of the terms and conditions of employment. At no time did any defendant file with the Secretary of Labor a statement identifying the van and bus and the Florida housing as vehicles and real property that were to be used for the transport and housing of migrant workers. At no time did any defendant file with the Secretary of Labor proof that the vehicles and housing used to transport and house migrant workers complied with the applicable federal and State safety and health standards. At no time did defendants obtain or file proof with the Secretary of Labor that they had obtained the liability insurance required to be maintained on vehicles used to transport migrant workers.

*The Parties are Within the Coverage of the Act*

The Act defines "farm labor contractor" as any corporation or individual "who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports migrant workers . . . for agricultural employment." 7 U.S.C. § 2042(b). It is plain that Bernard James and Vapour Investors come within this definition.

■ First, it is beyond dispute that the acts of Vapour Investors and Bernard James previously described constituted the recruitment, solicitation, hiring, furnishing and transportation of the eleven plaintiffs for agricultural employment in Florida. See 29 C.F.R. § 41.7 (the terms "recruits, solicits, hires, furnishes and transports" "are to be given their ordinary meaning as each is defined in the unabridged edition of Webster's New International Dictionary").

It is equally certain that plaintiffs are "migrant workers," since they are "individual[s] . . . who perform[ed] agricultural labor, on a seasonal or other temporary basis." 7 U.S.C. § 2042(g). See 29 C.F.R. § 41.14(b).

Turning next to the question whether defendants performed the above-described acts for a "fee" as the statute requires, it is established that the employment contracts provided that each plaintiff was to pay Vapour Investors $300 for the transportation to Florida. We hold that the promise to pay transportation costs amounted to a statutory "fee," *i. e.*, "money or other valuable consideration" that was "promised to be paid" to Vapour Investors for its services as a farm labor contractor. See 7 U.S.C. § 2042(c); 29 C.F.R. § 41.5. Furthermore, it is undisputed that Bernard James drew salary from Vapour Investors depending on the success of its ventures. This salary arrangement also was a "fee" within the meaning of the Act, since it was money promised James for his services in successfully recruiting, soliciting, hiring and furnishing plaintiffs for agricultural employment in Florida. Thus both Bernard James and Vapour Investors must be considered "farm labor contractors" within the meaning of the Act. See 29 C.F.R. § 41.6. ("In view of the phrase 'either for himself or on behalf of another person,' it does not matter whether the person is engaging in the activities of a farm labor contractor for his own personal use and benefit or for or on behalf of his employer, contractor, or some other person.")

*Motion for Default Judgment against Frank James*

Plaintiffs' complaint alleged that since Bernard James' brother, Glen Frank James, drove the bus to Florida, he also could be considered a "farm labor contractor" and liable for violations of the Act. It is not necessary that the alleged farm labor contractor have performed each of the activities listed in 7 U.S.C. § 2042(b); merely transporting migrant workers to agricultural employment for a fee would be sufficient to bring Frank James within the Act's coverage. See *Marshall v. Buntings' Nurseries of Selbyville, Inc.*, 459 F.Supp. 92, 96, 97–98 (D.Md.1978); *Usery v. Golden Gem Growers, Inc.*, 417 F.Supp. 857, 861 (M.D.Fla. 1976).

An answer was submitted on behalf of all defendants, including Frank James, by defendants' attorney. Plaintiffs, however, have been frustrated from obtaining deposition discovery from Frank James, despite an order of this Court directing him to appear for his deposition. That order was entered after the Magistrate had recommended that defendants' answer be stricken, and a default judgment entered against them because of their failure on two occasions to appear for regularly scheduled depositions. The circumstances which prompted the Magistrate to recommend as he did are set forth in a letter dated December 19, 1979, addressed to this Court by plaintiffs' attorney. Although not repeated here, the Court has considered the letter in deciding the present motion.

On the date set in the Court's order for the deposition of both defendants, counsel and Bernard James appeared, but Frank James did not. When asked why, Bernard James explained that "he is not in New York State. He is in Texas. He is in the Peace Corps. He's traveling." Counsel for defendant then acknowledged that during the previous week, when he knew about the impending court-ordered deposition, he had seen Frank James in the office that counsel shared with James' grandfather but did not tell him about the deposition. Counsel sought to excuse this failure on the ground that because Frank James was around on that day, he assumed that Frank James was going to stay.

■ It is obvious that defendants view Frank James as only an incidental figure in this lawsuit, who need not respond in any manner to plaintiffs' legitimate discovery requests. As previously noted, however, plaintiffs' complaint and affidavits aver that Frank James drove one of the buses to Florida. Noting the prior derelictions of defendants and their counsel, we find Frank James' continued refusal to appear

for his deposition and his counsel's incredible failure to inform him of the new date for the deposition, and to take steps to insure his attendance upon seeing him only days after the new date was set, constitute " 'flagrant bad faith' " and " 'callous disregard' by ... counsel of [his] responsibilities," *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976), amounting, in this case, to "gross professional negligence." *Cine Forty Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1068 (2d Cir. 1979). Accordingly, the Court has decided to impose "the most severe in the spectrum of sanctions provided by statute or rule," *National Hockey League, supra*, 427 U.S. at 643, 96 S.Ct. at 2781, and directs that a judgment by default be entered against Frank James.

*Plaintiffs' Motion for Summary Judgment*

Summary judgment may be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. Pursuant to the 1963 amendments, Rule 56(e) provides that when a motion for summary judgment is supported by proper affidavits, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

In determining whether to grant a motion for summary judgment, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967), *quoted in SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). It must accept as true factual statements in the opposing party's affidavits, draw all permissible inferences in that party's favor,

*Hill v. A–T–O, Inc.*, 535 F.2d 1349 (2d Cir. 1976), and resolve any doubts in favor of the latter, *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., supra.* "The very mission of the summary judgment procedure [however] is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Adv.Com. Note to Proposed Amendments to Rule 56(e), 31 F.R.D. 648 (1962). See generally *Donnelly v. Guion*, 467 F.2d 290, 292 (2d Cir. 1972); *Applegate v. Top Associates, Inc.*, 425 F.2d 92 (2d Cir. 1970).

In the present case, as previously noted, the facts have been established through the affidavits submitted by each plaintiff, the admissions of defendants, and the uncontroverted statement of material facts provided by plaintiffs pursuant to Rule 9(g). Thus, there remain only the issues of law whether defendants violated the Act and what recovery, if any, plaintiffs may have.

█ The Act provides that "[n]o person shall engage in activities as a farm labor contractor unless he first obtains a certificate of registration from the Secretary, and unless such certificate is in full force and effect and is in such person's immediate possession." 7 U.S.C. § 2043(a). Bernard James and Vapour Investors violated this section by recruiting, soliciting, hiring, furnishing and transporting plaintiffs for a fee in the manner set forth above, without first having obtained a certificate of registration.

The Act further declares that "[e]very farm labor contractor shall carry his certificate of registration with him at all times while engaging in activities as a farm labor contractor and exhibit the same to all persons with whom he intends to deal in his capacity as a farm labor contractor prior to so dealing ...." 7 U.S.C. § 2045(a). Bernard James and Vapour Investors violated this provision because there was never exhibited to any of the plaintiffs a certificate of registration issued to either James or Vapour Investors prior to plaintiffs' signing the contracts with the latter.

The Act requires that "[e]very farm labor contractor shall upon arrival at a given place of employment, post in a conspicuous place a written statement of the terms and conditions of that employment." 7 U.S.C. § 2045(c). This Bernard James and Vapour Investors did not do.

The Act further requires that a "farm labor contractor shall, in the event he manages, supervises, or otherwise controls the housing facilities, post in a conspicuous place the terms and conditions of occupancy." Bernard James and Vapour Investors had "the power or authority to oversee, manage, superintend or administer," 29 C.F.R. § 40.2(q), the housing provided plaintiffs on arrival through the crew leader, who was acting as James' and Vapour Investors' on-site agent. Thus, they were in "control" of the Winter Haven housing, see 29 C.F.R. § 40.2(q) (defining "control"), and violated § 2045(d) by not posting the required information.

29 C.F.R. § 40.19(a) declares that:

"No farm labor contractor may transport migrant workers within the meaning of the Act, unless said person shall submit [to the Secretary of Labor]—

"(1) Written proof of insurance of financial responsibility as required by [29 C.F.R.] § 40.14 and 40.15 . . . ;

"(2) A statement in the manner prescribed by the Secretary identifying each vehicle to be used by the applicant [for a certificate of registration] for the transportation of migrant workers and under the applicant's ownership and control; and

"(3) Written proof that every such vehicle is in compliance with all applicable Federal and State safety and health standards and with the rules and regulations promulgated by the Bureau of Motor Carrier Safety, Federal Highway Administration of the U.S. Department of Transportation."

The direct proscription of transportation contained in the regulation supplements 7 U.S.C. § 2044(a), which provides that the Secretary "shall" issue a certificate of registration to any person who has filed the materials set forth in subparagraphs (1) through (5), including proof that vehicles used to transport migrant workers are covered by liability insurance or the equivalent; identification of the vehicles; and proof that they comply with the applicable health and safety standards. 7 U.S.C. § 2044(a)(2), (4). Failure to maintain the insurance required by § 2044(a)(2) is also a ground for the Secretary to refuse to issue or renew, or to suspend or revoke a certificate of registration, see 7 U.S.C. § 2044(b)(5), as is a finding by the Secretary that the farm labor contractor has used a vehicle that fails to conform to the specified health and safety standards, id., § 2044(b)(12).

Bernard James and Vapour Investors violated 29 C.F.R. § 40.19 in three ways: they transported migrant workers without submitting to the Secretary proof (1) that they had obtained insurance or (2) that the vehicles were in compliance with federal and State safety and health standards, and (3) without identifying which vehicles they intended to use. Each failure may be considered a separate violation, as plaintiffs have contended, see Pl. Br. at 14, since the transporting of plaintiffs would have been unlawful under the regulation if any of the requirements had not been met. Defendants may not be heard to argue that their wholly unlawful conduct merits the same degree of liability as that of a person who has failed to comply with only one of the provisions. Each requirement served a separate purpose in aid of the Act's overall purpose of protecting migrant workers.

Lastly, plaintiffs contend that defendants committed two further violations of the obligations imposed by 29 C.F.R. § 40.51(e), in that they did not file with the Secretary either a statement identifying the housing to be provided plaintiffs in Florida or proof that such housing complied with the applicable federal and State health and safety standards, as required by 29 C.F.R. § 40.-20(a). As noted previously, the Florida housing was under the control of defendants. Again, it is undisputed that defendants failed to comply with either of these requirements.

The Court finds that plaintiffs have sufficiently established defendants' foregoing violations of the Act. Their affidavits amply demonstrate that they are persons "aggrieved" by these violations and, accordingly, that they are entitled to maintain this action, see 7 U.S.C. § 2050a(a) and to obtain appropriate redress. But it is only if the Court also finds that defendants "intentionally violated" any provision of the Act or regulations thereunder that "damages up to and including an amount equal to the amount of actual damages, or $500 for each violation, or other equitable relief" may be awarded. 7 U.S.C. § 2050a(b).

In the present case there is ample basis for concluding, even in the context of a summary judgment motion, that defendants "intentionally violated" the provisions of the Act and regulations previously set forth. "Intentionally" has been interpreted to refer only "to the common civil standard which holds a person liable for the natural consequences of his or her acts." *DeLeon v. Ramirez*, 465 F.Supp. 698, 705 (S.D.N.Y. 1979). There is no question that defendants "intended" to do the acts which by law turned them into farm labor contractors and at the same time put them in violation of the Act.

Turning next to the relief to which plaintiffs are entitled, the statutory provision for an award of damages has been interpreted "to provide either for actual damages, or for liquidated damages of $500," *DeLeon v. Ramirez, supra*, 465 F.Supp. at 706. The provision for liquidated damages permits "effectuation of the Congressional intent to remedy abuses in the area of farm labor contracting of migrant workers." *Id.* Plaintiffs here seek imposition of liquidated damages. Such damages will be assessed for each violation for each plaintiff aggrieved thereby.

*Motion for Intervention*

Rule 24(b), F.R.Civ.P., provides that "[u]pon timely application anyone may be permitted to intervene in an action: ... (2) where an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

The proposed complaint of applicant Foster is identical to that submitted by the eleven main plaintiffs. Thus applicant argues that he has more than satisfied the requirement of Rule 24(b)(2), in that his claims are indistinguishable from those of plaintiffs. See *Swift v. Toia*, 450 F.Supp. 983, 990 (S.D.N.Y.1978), *aff'd*, 598 F.2d 312 (2d Cir. 1979). He further argues that on the issue of the timeliness of his claim, which is to be "determined from all the circumstances" of the case, *NAACP v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973), there has been no prejudice to any party since discovery on his claims has been completed, his claims do not differ from those already at issue, and he learned of the litigation only during the course of the discovery proceedings.

■ While ordinarily we might agree that an applicant for intervention, as described in counsel's brief and the preceding paragraph, should be permitted to intervene, the applicant's own affidavit has furnished the reason why the motion should be denied.

From this affidavit it appears that Foster is in a substantially different position from the plaintiffs. The contract Foster signed at Bernard James' behest stated that Foster was to be hired to drive to Florida. Foster drove both the van and the bus to Florida but was never paid. The affidavit omits any reference to working in the groves picking citrus.

In these circumstances the Court denies the motion to intervene. Except for the complaint that has been filed for Foster—a xeroxed copy of the plaintiff's complaint—it does not appear that he shares common questions of law or fact with the main plaintiffs. The proposed complaint notwithstanding, Foster's affidavit strongly suggests that he has no claims against James arising under the Farm Labor Contractor Registration Act, since he was never hired or transported for "agricultural em-

ployment." Furthermore, because the main plaintiffs' remaining claims all involve the particular form contracts they signed, the events preceding that act, and the work they performed and the pay they received pursuant to those contracts, the dissimilarity of his position prevents intervention, since there is no basis for determining whether his claims in fact involve any common question of law or fact.

In sum, a judgment by default is entered against Frank James. Kenneth Foster's motion to intervene is denied. Partial summary judgment is awarded against Bernard James and Vapour Investors for each of nine violations of the Act, with respect to each of the eleven plaintiffs. Total damages on these claims amount to $49,500. Defendants Bernard James and Vapour Investors are jointly and severally liable for this amount. "Particularly where the corporate and individual defendants are as closely linked as they are in the instant case, a corporate officer may be found personally liable for a statutory violation committed by him even if he acted ostensibly for the corporation." *DeLeon v. Ramirez, supra*, 465 F.Supp. at 706, citing *A & M Records, Inc. v. M.V.C. Distributing Corp.*, 574 F.2d 312 (6th Cir. 1978).

SO ORDERED.