Efrain MALDONADO, Jesus Colon, Rene Torres, Nelson Garcia, Hector Colon, Reinaldo Clarin, Angel Caraballo, Daniel Caraballo, Hernan Cortes, Luis Acevedo, Benjamin Pabon, Roberto Claudio, Pablo Sanchez, Alfredo Muniz, Felipe Melendez, and Ketsy Alicea (Merced), Plaintiffs,

v.

Rusty LUCCA, Lawrence Errera, d/b/a Bar O Farms, and Pedro Bermudez, Defendants.

Civ. A. No. 85–1471.

United States District Court, D. New Jersey.

May 1, 1986.
Supplemental Opinion July 10, 1986.

Laurence E. Norton, II, Camden Regional Legal Services, Inc., Farmworker Div., Vineland, N.J., for plaintiffs.

William S. Cappuccio, Hammonton, N.J., for defendants Rusty Lucca and Lawrence Errera, d/b/a Bar O Farms.

## OPINION

BROTMAN, District Judge.

This opinion addresses the amount of damages, attorney's fees, and costs owed to plaintiffs by defendants Rusty Lucca and Lawrence Errera, d/b/a Bar O Farms. On February 24, 1986 the court issued its findings of fact and conclusions of law, pursuant to a week-long trial on liability issues. The court found, *inter alia*, that defendants Lucca and Errera were "joint employers" with crewleader and co-defendant Pedro Bermudez under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Migrant and Seasonal Agricultural Worker Protection Act ("MSPA"), 29 U.S.C. § 1801 *et seq.* Accordingly, they are liable to plaintiffs for unpaid minimum

wages for work performed on defendants' blueberry farm in the summer of 1984.

The damage phase of the trial was held March 10, 1986. At its conclusion, counsel for defendants Lucca and Errera stipulated that the figures set out in the Joint Final Pre-Trial Order accurately represented the unpaid minimum wages owed to plaintiffs. The aggregate amount of unpaid wages is $3,636.81.[1] The FLSA provides that successful plaintiffs shall recover costs and attorney's fees. Accordingly, plaintiffs' counsel has filed a motion for costs and attorney's fees.

**Factual and Legal Background**

The court incorporates by reference its Findings of Fact and Conclusions of Law in *Maldonado v. Lucca,* 629 F.Supp. 483 (D.N.J.1986).

**A. Damages**

**1. FLSA**

**a. Actual Damages**

As noted, defendants stipulated that actual damages total $3,636.81 for violation of the minimum wage provision, 29 U.S.C. § 206(a)(5).

**b. Liquidated Damages**

■ Section 216(b) of the FLSA provides that defendants found to have violated the act's minimum wage or maximum hour provisions shall pay to plaintiffs damages consisting of unpaid wages and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, employers have a defense to this otherwise mandatory liquidated damages provision. Section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, provides:

if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

The employer thus has the " 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.' " *Marshall v. Brunner,* 668 F.2d 748, 753 (3rd Cir.1982), *quoting Rothman v. Publicker Industries,* 201 F.2d 618, 620 (3rd Cir.1953). Without such a showing, a district court has no discretion to mitigate an employer's statutory liability for liquidated damages. *Id. See also Williams v. Tri-County Growers, Inc.,* 747 F.2d 121, 128–30 (3rd Cir.1984).

In its previous opinion, the court observed that defendants had attempted to meet their legal obligations to the farm-workers.

The court believes that defendants Lucca and Errera did act responsibly in requiring their crew leaders to submit payroll records and to provide proof of their state and federal certification. They complied with the state's investigation of Bermudez' crew members' claims for unpaid wages and willingly wrote checks to satisfy the amounts the state decided were due. However, the court is obliged to find that defendants Lucca and Errera were plaintiffs' employers

1. The actual damages break down as follows:

| Plaintiff | Unpaid Minimum Wages Claimed |
|---|---|
| E. Maldonado | $241.18 |
| R. Torres | 68.68 |
| A. Caraballo | 68.68 |
| D. Caraballo | 68.68 |
| R. Clarin | 335.91 |
| H. Colon | 377.92 |
| N. Garcia | 383.17 |
| J. Colon | 250.28 |
| H. Cortes | $345.05 |
| L. Acevedo | 351.75 |
| B. Pabon | 250.28 |
| A. Muniz | 117.25 |
| K. Alicea (Merced) | 107.20 |
| P. Sanchez | 246.00 |
| F. Melendez | 143.38 |
| R. Claudio | 281.40 |
| Total: | $3,636.81 |

within the meaning of the federal scheme. Defendants' prior conduct and compliance may well mitigate the amount of damages assessed against them, but the issue of damages is not before the court at this time.

629 F.Supp at 489.

The good faith requirement of 29 U.S.C. § 260 requires that an employer demonstrate an "honest intention to ascertain and follow the dictates of the [FLSA]." *Marshall v. Brunner, supra,* 668 F.2d at 753, citing *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 464 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). The court has already made specific findings which appear to support defendants' contention that they had such an "honest intention."

—Defendants required crew leaders to submit payroll records on a daily basis. Findings of Fact, ¶ 17.

—Lucca scanned those payroll records to check that blueberry pickers were making the minimum wage. *Id.* ¶ 18.

—Defendants complied with the state Wage and Hour Division's request to write checks to members of Bermudez' crew for unpaid minimum wages. They also cooperated with the state's investigation of those claims. *Id.* ¶ 20.

—Errera attended an informational meeting in 1984 where state and federal labor officials explained the crew leaders' legal obligations. *Id.* ¶ 23.

In addition, during the damages phase of the trial, Lucca reiterated his previous testimony that he was aware that pickers were entitled to receive at least the minimum wage and that he and Errera attempted to comply with state and federal law, as they understood it.

Nonetheless, one factor precludes that court from finding that defendants acted wholly reasonably and in good faith. While defendants cooperated with the state's investigation of the unpaid wage claims filed by members of Bermudez' crew, they made compensation for those claims conditional on workers' waiver of any other related claims. *Id.* ¶ 21. Defendants were responsible, as joint employers, for paying or making sure their workers were paid the minimum wage. This obligation is entirely separate from their obligation to comply with other provisions of state and federal law, such as recordkeeping, furnishing written descriptions of employment, or issuing pay statements reflecting deductions for FICA or unemployment insurances.

Requiring workers to waive any and all related claims in order to receive long-overdue benefits strikes this court as a duplicitous attempt to capitalize on the workers' utter lack of bargaining power. The workers deserved their wages, regardless of whatever other claims they may have had. Defendants' insistence that they waive future claims as a condition of receiving a check signifies a high degree of self-interest and a fundamental lack of good faith. Furthermore, such a waiver conflicts directly with protections guaranteed by the MSPA, 29 U.S.C. § 1856, and FLSA (*see Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)). Offering wages not in dispute in exchange for a waiver of other claims also violates the New Jersey Wage and Hour Law, N.J.S.A. 34:11–4.8.

Accordingly, defendants Lucca and Errera have not met the two-pronged test of good faith and reasonableness under the Portal-to-Portal Act's defense and the court must assess liquidated damages in an amount equal to the actual damages suffered, in this case $3,636.81. *See* 29 U.S.C. §§ 216(b), 260.

**2. MSPA**

The court's previous opinion held that defendants Lucca and Errera were also "joint employers" under the MSPA, 29 U.S.C. § 1801 *et seq.* Consequently, plaintiffs are entitled to damages for violations of that act in an amount sufficient to further its purposes. Congress enacted MSPA to protect migrant and seasonal agricultural workers, who have historically been exploited. *See generally* H.R.Rep.

No. 97–885, 97th Cong., 2d Sess., page 7 (1982), reprinted in 1982 U.S.Code Cong. & Ad.News 4547, 4553 ("House Report"). Under the MSPA, the court is authorized to assess liquidated damages of up to $500.00 per violation for each plaintiff.

In order to recover for violations of the MSPA, plaintiffs must show that defendants' violations of the act were "intentional." 29 U.S.C. § 1854(c)(1). As used in the MSPA, "intentional" means "conscious or deliberate and does not require a specific intent to violate the law." *Alvarez v. Joan of Arc, Inc.,* 658 F.2d 1217, 1224 (7th Cir. 1981). Under this standard, persons are responsible for and liable for the natural consequences of their acts. *Castillo v. Givens,* 704 F.2d 181, 197, 198 (5th Cir. 1983); *De la Fuente v. Stokely-Van Camp, Inc.,* 514 F.Supp. 68, 79 (C.D.Ill. 1981); *Steward v. James,* 519 F.Supp. 315, 321 (E.D.N.Y.1981).

In *Castillo v. Givens, supra,* the court held that because a farmer was aware of the existence of a law requiring farm labor contractors to carry identification cards in order to be paid, his failure to keep payroll records on the individual plaintiffs was intentional within the meaning of the MSPA. 704 F.2d at 198. The court also noted that its standard for "intentional violation" facilitates the enforcement through the MSPA of otherwise unenforceable rights created by the FLSA. *Id.* at 198, n. 41, *quoting Note, A Defense of the Farm Labor Contractor Registration Act,* 59 Tex. L.Rev. 531, 537 n. 61 (1981). For example, the penalties authorized under the MSPA can be used to address an employer's fail-

ure to maintain proper payroll records, as required under both acts. *Id.*

In the instant case, both Lucca and Errera testified that they knew that workers were entitled to earn at least the minimum wage and that accurate payroll records had to be maintained. They presumed that keeping accurate records was the crew leader's responsibility, but as joint employers of the blueberry pickers they shared that obligation. Defendants were aware that migrant and seasonal workers are protected by state and federal labor laws, as evidenced by their testimony and by Errera's attendance at at least one informational meeting sponsored by state and federal labor officials.

Because they were admittedly aware of the statutes and regulations applicable to their business, any violation by defendants of the MSPA must be deemed "intentional" within the meaning of that act.

### a. *Specific Violations*

#### (1) Recordkeeping violations

■ The MSPA requires farm labor contractors and agricultural employers to "make, keep and preserve records for 3 years" of information, including the total number of hours worked in a pay period. 29 U.S.C. §§ 1821(a), 1831(c). The evidence at both trials showed that defendants kept no records at all for the plaintiffs' first week of employment. Furthermore, the records which Bermudez submitted to Lucca after his crew had stopped picking blueberries for Bar O Farms on July 5, 1984 (Plaintiffs' Exhibit 8) conflict in numerous ways with other trial testimony.[2] These

---

**2.** For example, plaintiffs Benjamin Pabon and Ketsy Alicea testified at the January trial that they worked from 7:00 a.m. until 3:00 or 4:00 p.m. and that most pickers worked comparable hours. Bermudez submitted records showing tremendous variation in hours worked. Ketsy Alicea testified that she and her friend Maria Rodriguez always started, worked and finished together. This contradicts Bermudez' records, which show wide discrepancies in the hours worked by both women. Ketsy Alicea also testified that on July 5, 1984 (the day Lucca fired Bermudez), neither she, nor her mother Carmen Merced, nor Maria Rodriguez worked at all.

Bermudez' records indicate that on that day Ketsy Alicea worked four hours and Carmen Merced worked five hours. Supporting Ketsy Alicea's version, Lucca testified that no member of Bermudez' crew worked on July 5, 1984.

Plaintiffs and defendant Errera testified, and this court found, that the average worker picked one crate per hour and earned a piece rate of $2.30 per crate. Findings of Fact ¶¶ 8, 9. Contradicting these findings, Bermudez' records purport to show that no worker ever earned substantially less than $3.35 per hour, the minimum wage.

conflicts suggest strongly that Bermudez fabricated these records after the fact and that no accurate records were ever kept.

### (2) Pay Statement Violation

The court found that no plaintiff ever received an itemized written statement for each pay period which reflected deductions from pay or number of hours worked. Findings of Fact ¶ 12. The MSPA requires farm labor contractors and agricultural employers to provide workers with such statements. 29 U.S.C. §§ 1821(d)(2), 1831(c)(2). Defendants Lucca and Errera are liable to each plaintiff for this violation.

### (3) Failure to Pay Wages When Due

The MSPA requires employers to pay agricultural workers "wages owed" when due. 29 U.S.C. § 1832(a). Plaintiffs Benjamin Pabon and Ketsy Alicea and Widillia Hernandez, the administrator of New Jersey's farmworkers opportunity program, testified without contradiction that plaintiffs' working arrangement provided for payment each week. Defendants admit, and the court found, that plaintiffs were not paid at all for their last week of work. Findings of Fact ¶ 11. As noted earlier, when state officials asked defendants to make good on claims filed by members of Bermudez' crew, defendants made payment contingent on the workers' waiver of state and federally protected rights. For this violation, defendants Lucca and Errera are liable to all plaintiffs.

### (4) Failure to Provide Plaintiffs at the Time of Recruitment with Written Terms and Conditions of Employment

The MSPA also attempts to safeguard workers' rights by requiring employers to provide them with the written terms and conditions of their employment when they are recruited. 29 U.S.C. §§ 1821(a), 1831(a). The court found previously that no plaintiff ever received such written confirmation. Findings of Fact ¶ 12. This violation is particularly significant because without tangible evidence of the terms and conditions of promised employment, workers are at a considerable disadvantage to show the duration of employment offered and promised benefits. This, in turn, could make it more difficult to prove actual damages.[3]

### (5) Defendants' Failure to Abide by the Working Arrangements Made with Plaintiffs

The MSPA prohibits an employer from violating terms of a working arrangement without justification. 29 U.S.C. §§ 1822(c), 1832(c). Regulations promulgated by the Department of Labor indicate that ordinarily, " 'without justification' would not include situations in which failure to comply with the terms of any working arrangements was directly attributable to acts of God, due to conditions beyond the control of the person or to conditions which he could not reasonably foresee." 29 C.F.R. § 500.72(a). This court can find no case interpreting either the statute or the regulation, and will treat this as a question of first impression.

Bermudez recruited migrant workers on his own, telling them that they would work picking blueberries and then move on to peaches and apples. He promised to provide transportation and housing. *See* Testimony of Widillia Hernandez, Benjamin Pabon. At that point, Bermudez was re-

---

Finally, several witnesses testified that productivity varies among workers and from day to day. Bermudez' records do not reflect any such variation. They show a uniform, predictable correlation between hours worked and crates picked (i.e. 7 crates—5 hours; 5 crates—3½ hours; 6 crates—4 hours). Simple arithmetic supports the conclusion that Bermudez fabricated his records, because the per crate rate for 7, 6 or 5 crates ($16.10, $13.80, $11.50) is remarka-

bly close to the minimum wage rate multiplied by the corresponding hours ($16.75, $13.40, $11.73).

**3.** Since defendants here stipulated to the amount of actual damages, this point is not directly relevant. However, it suggests the importance of this provision in effectuating the MSPA's original intention: to protect agricultural workers.

cruiting workers on Bar O's behalf, because Lucca had advanced funds and assured Bermudez that he and his crew would have work for the entire blueberry season.

■ As joint employers, Lucca and Errera were required to abide by the working arrangement which Bermudez offered to plaintiffs unless they had justification, at least for the duration of the blueberry season. By incorporating the joint employment doctrine into the MSPA, Congress intended to protect agricultural workers and prevent farmers from shielding themselves by blaming broken agreements on delinquent farm labor contractors.

> It is the [House Committee on Education and Labor]'s intention that the duty is owed by the entity that makes the arrangement with the migrant worker and any additional entity which is a joint employer with such entity.

House Report at 17, U.S.Code Cong. & Admin.News 1982, p. 4563.

Plaintiffs argue that Lucca and Errera had no justification for violating the working arrangement established by Bermudez. Specifically, they contend that Lucca and Errera made little or no attempt to inquire into the workers' needs and made no effort to provide workers with the housing and/or transportation they needed to continue working through the blueberry season after Bermudez terminated his relationship with Bar O Farms. They concede that Lucca did offer continued employment to the workers but fault him for not offering any transportation and/or housing. Without these essentials, the workers were in no position to accept Lucca's presumably well-intentioned offer. Plaintiffs argue that where joint employers control different aspects of the employment relationship, it would frustrate the purposes of the MSPA to allow each to claim no responsibility for the benefits provided by the other. They contend that farmers like Lucca and Errera must be required to make inquiries about the benefits provided by their crewleaders and make reasonable efforts to supply such benefits if the crewleaders de-

part prematurely. Otherwise, plaintiffs claim, farmworkers will be stripped of both the benefits promised when they were hired and the federal guarantees of the MSPA.

Realizing that it may work a harsh result on these defendants, the court agrees with plaintiffs' position. Lucca and Errera "intentionally" breached the terms of plaintiffs' working arrangements by not offering transportation and/or housing for the duration of the blueberry season once Bermudez was fired. The evidence did not show that this breach resulted from an act of God or conditions beyond defendants' control. Nor did it show that defendants could not have reasonably foreseen plaintiffs' predicament. 29 C.F.R. § 500.72(a).

■ By firing Bermudez in mid-season, and failing to bolster his offer of continued employment with a promise of housing and/or transportation, Lucca placed plaintiffs in economic jeopardy. He and his partner are responsible for the "natural consequences" of that conduct. *Castillo v. Givens, supra,* 704 F.2d at 197. Joint employers cannot delineate areas of responsibility among themselves and then plead ignorance when one of them disappears. Lucca and Errera are liable to all plaintiffs for violations of this provision.

### b. Amount of Liquidated Damages

As joint employers, defendants Lucca and Errera are liable to these plaintiffs for "intentionally" violating the above-mentioned provisions of the MSPA, regardless of Bermudez' role. These defendants try to persuade the court that defendant Bermudez "in effect must undertake some of the liability." Affidavit of William Cappuccio, ¶ 3. Although Bermudez did not appear in these proceedings, testimony established his pivotal role in the circumstances which led to this litigation. But Bermudez' potential liability does not diminish Lucca and Errera's liability under the joint employer doctrine of FLSA and MSPA. *See* 629 F.Supp. 483. As in other civil actions, these defendants may well have a cause of

action for contribution or indemnification against Bermudez. That possibility does not affect their liability to these plaintiffs. The court will assess defendants Lucca and Errera $35.00 for each of five violations of the MSPA, or a total of $175.00, for each of the seventeen (17) plaintiffs. The total amount of liquidated damages under the MSPA is therefore $2,975.00.

### B. Attorney's Fees and Costs

The FLSA provides that a successful plaintiff may recover from defendants a reasonable attorney's fee, plus costs. 29 U.S.C. § 216(b). Laurence E. Norton, II, plaintiffs' counsel, has petitioned for an award at a rate of $125.00 per hour for legal time and $65.00 per hour for travel time, as well as for $1,487.40 in costs.

Fee awards under the FLSA use the method set out in the Civil Rights Attorney Fees Awards Act, 42 U.S.C. § 1988. The Third Circuit uses, and the Supreme Court has implicitly endorsed, a "lodestar" approach for calculating fees. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Williams v. Tri-County Growers, Inc., supra*, 747 F.2d at 138 n. 38, 139–43.

Under the "lodestar" approach, the court multiplies the hours reasonably expended by counsel in representation on the case by the reasonable hourly rate for the attorney involved. *See Lindy Bros. Builders, Inc. v. American Radiator*, 540 F.2d 102 (3rd Cir.1976); *Merola v. Atlantic-Richfield Co.*, 515 F.2d 165 (3rd Cir.1975).

Plaintiffs' counsel carries the burden of showing that the claimed rate and number of hours are reasonable. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Neither the ultimate amount nor the method used are affected by the fact that plaintiffs' counsel is employed by a legal services office. *Id.* Mr. Norton, a staff attorney for Camden Re-

gional Legal Services, Farmworker Division, has submitted a detailed affidavit of services.

A court may increase or decrease the "lodestar" under certain circumstances, but "where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart, supra*, 461 U.S. at 435, 103 S.Ct. at 1940. In determining whether the results obtained are "excellent," the court may consider whether persons other than the named plaintiffs will benefit from the outcome. *Id.* at 438, 103 S.Ct. at 1942. In this case, it is clear to the court that the impact of its decision will reach far beyond the individual plaintiffs. As a result of this litigation, farmers in New Jersey who employ migrant and seasonal agricultural workers must redouble their efforts to comply with state and federal wage and hour laws, without necessarily relying on transient crew leaders to hire, pay and fire their workers. The net beneficiaries of this stepped-up compliance will be the workers themselves.

Plaintiffs' counsel seeks a fee of $125.00 an hour for 175.42 hours of legal work and $65.00 an hour for 27.17 hours of travel time. Plaintiffs' counsel submits affidavits from certain lawyers in the region to support his contention that such rates are reasonable. The court acknowledges that Mr. Norton has considerable experience in similar federal litigation across the country. He is well qualified and represented his clients capably, thoroughly and tirelessly throughout these proceedings. However, the court takes judicial notice of rates charged by lawyers in southern New Jersey, which range from $65 to over $150 an hour. The court believes that a fair rate to compensate Mr. Norton is $100 an hour for legal work and $50 an hour for travel time.[4]

---

4. For purposes of comparison, the court notes that in cases brought under the Social Security Act, 42 U.S.C. § 405(g), as amended, where this court has reversed the government's denial of disability benefits, counsel are generally award-

ed fees at a rate of $75.00 per hour. The typical Social Security case is decided on the papers submitted and, unlike the instant case, involves no discovery, trial preparation, or courtroom time.

Consequently, the court will grant Mr. Norton's application for fees in the amount of $17,542.00 for legal time and $1,358.50 for travel time, for a total fee award of $18,900.50 plus costs in the amount of $1,487.40.[5]

## Conclusion

For the reasons expressed in this opinion, the court will assess damages against defendants Lucca and Errera under the following:

| | | |
|---|---|---|
| FLSA, 29 U.S.C. § 216(b) | Actual damages | $ 3,636.81 |
| FLSA, 29 U.S.C. § 216(b) | Liquidated damages | 3,636.81 |
| MSPA, 29 U.S.C. § 1854(c)(1) | Liquidated damages at $35 per violation (5) per plaintiff (17) $35 × 5 × 17 = | 2,975.00 |
| | TOTAL DAMAGES | $10,248.62 |

Defendants Lucca and Errera will also be required to pay plaintiffs' costs and attorney's fees pursuant to 29 U.S.C. § 216(b), in the following amounts:

| | | |
|---|---|---|
| Attorney's fees (Legal time) | $100/hour × 175.42 hours | $17,542.00 |
| (Travel time) | $50/hour × 27.17 hours | 1,358.50 |
| Costs | | 1,487.40 |
| | TOTAL ATTORNEY'S FEES AND COSTS | $20,387.90 |

An appropriate order will be entered.

## ORDER

The court having issued an earlier opinion in this case, *Maldonado v. Lucca*, 629 F.Supp. 483 (1986) holding defendants Rusty Lucca and Lawrence Errera liable to plaintiffs for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801 *et seq.;* and

The court having presided over the damages phase of this trial on March 10, 1986 and reserved its decision; and

Counsel for plaintiffs, Laurence E. Norton, II, having petitioned this court for costs and attorney's fees under the Fair Labor Standards Act, 29 U.S.C. § 216(b); and

The court having considered the testimony, arguments and submissions of all parties; and

For the reasons stated in the court's opinion filed this date;

It is on this 1st day of May, 1986, hereby ORDERED that judgment is entered in favor of plaintiffs and against defendants Rusty Lucca and Lawrence Errera for damages in the total amount of $10,248.62, as well as attorney's fees and costs in the amount of $20,387.90.

## SUPPLEMENTAL OPINION

■ In previous opinions, this court held that defendants Rusty Lucca and Lawrence Errera are liable to plaintiffs for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Migrant and Seasonal Agricultural Worker Protection Act ("MSPA"), 29 U.S.C. § 1801 *et seq.* The court assessed damages against those defendants in the aggregate amount of $10,248.62. *See* Opinion and Order, May 1, 1986, p. 622. Plaintiffs now move for reconsideration, alteration and amendment of the court's ruling on damages, pursuant to Fed.R.Civ.P. 59(a)(2) and Rule 12 I of the General Rules for the District of New Jersey. Plaintiffs also move for entry of a default judgment against defendant Pedro Bermudez.

The clerk of the court entered a default against defendant Bermudez on November 1, 1985, pursuant to plaintiffs' filing an affidavit of counsel indicating that the defendant had been properly served and had not answered the complaint within the required time. Because plaintiffs were unable to effect personal service, they sought

---

**5.** In reaching these figures, the court relies on Exhibits A and B to Mr. Norton's affidavit which break down the hours spent on this case and the costs incurred.

and received a court order that the United States Secretary of Labor be designated defendant Bermudez's agent for accepting service of process. Order, June 13, 1985. Defendant Bermudez has not appeared in this action.

The testimony presented to the court shows that defendant Bermudez is liable for each violation of the FLSA and the MSPA established against Lucca and Errera. *See* Findings of Fact and Conclusions of Law, February 24, 1986 (reported as *Maldonado v. Lucca*, 629 F.Supp. 483 (D.N.J.1985)). The amount of damages under FLSA, $3,636.81 in actual and $3,636.81 in liquidated damages, remains unchanged. *See* Opinion and Order, May 1, 1986, p. 622. As indicated in the court's earlier opinion, the court has discretion to award any amount up to $500 as liquidated damages for each violation of the MSPA.

Faced with this motion for default judgment against Bermudez, the court must reevaluate the amount of liquidated damages already awarded against Lucca and Errera. All defendants will be jointly and severally liable for the full amount of the judgment. Bermudez's culpability for plaintiffs' injuries, as evidenced by ample testimony at trial and discussed more fully in previous opinions, certainly should affect the amount of that award. In its original determination of damages, the court considered only Lucca and Errera's liability, and any mitigating factors applicable to them do not apply equally to Bermudez. However, because defendants' liability under FLSA and MSPA is based on the "joint employment" doctrine, the court is not willing to assess different amounts of damages against Bermudez on the one hand and Lucca and Errera on the other. In ordinary circumstances, the court grants motions to reconsider its judgments very sparingly. These circumstances, however, require reconsideration.

Plaintiffs direct the court to *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317 (5th Cir.1985), in which the Fifth Circuit noted that Congress intended MSPA's liquidated damages provision "to promote enforcement of the Act and thereby deter and correct the exploitive practices that have historically plagued the migrant farm labor market." 765 F.2d at 1332. The *Beliz* court listed several relevant factors for district courts to consider in exercising their discretion over the amount of liquidated damages. These include:

1. The total amount of the award;
2. The nature and persistence of the violations;
3. The extent of the defendants' culpability;
4. The substantive or technical nature of the violations;
5. Damages awarded in similar cases;
6. The defendants' ability to prevent future violations of the Act;
7. The total number of plaintiffs involved;
8. The total number of violations;
9. The total amount to be assessed against the defendants;
10. The plaintiffs' recovery on closely related claims joined in the same suit that will in part compensate damage caused by violations of the act;
11. The circumstances of each case.

765 F.2d at 1332–33 (citing cases).

The *Beliz* court also observed that

it ought not to be cheaper to violate the Act and be sued than to comply with the statutory requirements. Nor should a worker who sues for violations find recovery inadequate to cover his personal costs in filing suit, testifying and paying attending attorney's fees, recovery of which is not allowed by the Act. Further, the legislative history of the Act notes that farm workers who attempt to assert their rights must overcome a general background of fear and intimidation caused by the widespread practice of retaliation against those who complain about violations. Awards should be adequate to encourage workers to assert their statutory rights.

*Id.* at 1333.

Initially, the court finds that defendant Bermudez is liable to plaintiffs for the iden-

tical violations of MSPA as are defendants Lucca and Errera. *See* Opinion, May 1, 1986, p. 622. Those violations are: (1) failure to make and keep adequate records, 29 U.S.C. §§ 1821(a), 1831(c); (2) failure to provide pay statements, 29 U.S.C. §§ 1821(d)(2), 1831(c)(2); (3) failure to pay wages when due, 29 U.S.C. § 1832(a); (4) failure to provide plaintiffs at the time of recruitment with written terms and conditions of employment, 29 U.S.C. §§ 1821(a), 1831(a); and (5) failure to abide by the working arrangements made with plaintiffs, 29 U.S.C. §§ 1822(c), 1832(c).

As plaintiffs point out, they were injured by each of these separate violations. Perhaps the most serious injury stems from defendants' failure to abide by the working arrangement. Had plaintiffs received work for the blueberry picking season with housing and transportation, as they were promised by Bermudez, they estimate that they would each have worked approximately 178 hours from July 5, 1984 until the end of the season on August 2, 1984. Plaintiffs base this estimate on the time records of Richard Kern, Jr., who loaded crates on the truck. At $3.35 per hour, plaintiffs calculate that they each suffered an actual loss of $596.30 for the failure of their joint employers to provide them with work for the picking season and with transportation and housing.

In crafting an appropriate award, the court must resolve the tension between Bermudez's flagrant disregard for plaintiffs' well-being and Lucca and Errera's attempts to comply with their legal obligations, as they understood them at the time. The court has previously held that Lucca and Errera's efforts do not provide a good-faith defense to the otherwise mandatory liquidated damages provision of the FLSA, and that they are liable as "joint employers" under both applicable statutes.

Nonetheless, this is a case of first impression in the District of New Jersey and in the Third Circuit. The court's decision that growers are joint employers with farm labor contractors for purposes of federal law has already and will continue to change agricultural labor practices in this region. Imposing the maximum allowable penalty on these defendants would be draconian and inequitable, despite the deterrent effect it might have on their peers. Now that the agricultural community has notice of its federal obligations, this court will not and other courts should not shrink from holding future violators fully accountable. But the novelty of this issue demands a certain degree of leniency.

Balancing plaintiffs' damages, which in many ways are incalculable, against the total amount to be assessed against the defendants poses another dilemma. The parties stipulated to actual damages in the amount of $3,636.81 under FLSA, an average of just over $225.00 for each of the sixteen plaintiffs. The court assessed mandatory liquidated damages in the same amount against Lucca and Errera, and that judgment will be entered against Bermudez as well. The average plaintiff, therefore, is entitled to $450.00 under FLSA (although the actual per plaintiff totals range from $137.36 to $766.34).

Plaintiffs themselves are not responsible for paying attorney's fees, because the court has already ordered that defendants shall pay those fees in the amount of $20,-387.90. In addition, because plaintiffs were represented by a legal services attorney, they incurred no out-of-pocket expenses or costs which the court needs to consider in setting a liquidated damages award.

Plaintiffs are certainly entitled to a total award which will compensate them for the expectancy value of their promised seasonal wages, as well as for their unpaid wages and an additional amount to reflect their incalculable injuries due to defendants' specific violations under MSPA. The court must consider the FLSA liquidated damages award as providing partial compensation for the same injuries addressed by MSPA, and is inclined to award more for violations of the working arrangement than for violations of other provisions. With these considerations in mind, and recognizing that defendants are already liable for

over \$20,000 in attorney's fees and over \$7,200 in damages under FLSA, the court will assess liquidated damages under MSPA as follows:

For violations of the working arrangement: \$375.00 per plaintiff.

For all other violtions of MSPA: \$150.00 per violation × four (4) violations = \$600.00 per plaintiff.

TOTAL LIQUIDATED DAMAGES UNDER MSPA: Sixteen (16) plaintiffs × \$975.00 per plaintiff = \$15,600.00

The court will vacate its previous judgment of damages and attorney's fees and will enter a new order incorporating a default judgment against defendant Bermudez and reflecting increased liquidated damages under MSPA.

## ORDER

This matter coming before the court on June 20, 1986, on plaintiffs' motions for reconsideration of a portion of the court's order dated May 1, 1985 and for entry of default judgment against defendant Pedro Bermudez; and

The court having considered the submissions of the parties; and

For the reasons stated in the court's opinion filed this date, which incorporates by reference but supersedes in part the court's previous opinions dated February 24, 1986 and May 1, 1986; and

For good cause shown,

IT IS on this 10th day of July, 1986, hereby

ORDERED that the court's order dated May 1, 1986 is VACATED; and it is

FURTHER ORDERED that plaintiffs' motion for entry of a default judgment against defendant Pedro Bermudez, Fed.R. Civ.P. 55(b)(2) is GRANTED; and it is

FURTHER ORDERED that judgment is entered in favor of plaintiffs and against defendants Rusty Lucca, Lawrence Errera, and Pedro Bermudez, jointly and severally, for damages in the total amount of \$22,-873.62, as well as attorney's fees and costs in the amount of \$20,387.90.