**Robert ROE, Plaintiff–Appellant,**

v.

**Helen M. SHERRY, Special Agent; Ray Larabee; Christopher Yohn; U.S. Naval Investigative Services; United States of America, Defendants–Appellees.**

No. 95–55761.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1996.

Decided July 31, 1996.

Martha Hall and Deborah DiIorio, DiIorio & Hall, San Diego, California, for plaintiff-appellant.

Tom Stahl, Assistant United States Attorney, San Diego, California, for defendants-appellees.

Before: FLOYD R. GIBSON,* JOHN T. NOONAN, Jr. and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge:

In this *Bivens*[1] action, Robert Roe contends Naval officers violated his rights under the Fourth and Fifth Amendments when they searched, seized, and disclosed his HIV test results. The district court determined the officers were entitled to qualified immunity and granted them summary judgment. Roe appeals. We have jurisdiction under 28 U.S.C. § 1291. We hold as a matter of law that no constitutional violation occurred, and we affirm.[2]

## FACTS

On a number of occasions, Roe and U.S. Navy Petty Officer Michael Healy engaged in unprotected sexual relations. Before engaging in this activity, Roe asked Healy whether he was HIV positive. Healy said he was not. This was not true. Healy had tested positive for HIV and was under a military order not to engage in unprotected sex and to inform any potential partner of his HIV status.

When Roe learned that Healy had tested positive for HIV, he contacted Healy's commanding officer and reported Healy's misconduct. Special Agent Helen Sherry was assigned to the case. In response to Sherry's request, Roe provided Sherry with a sworn statement in which Roe stated that he and Healy had engaged in unprotected sexual relations and that Healy had not informed him beforehand of his HIV-positive status. Roe also told Sherry that he had been tested for HIV and his results were negative.

Attempting to obtain more evidence of Healy's alleged misconduct, Sherry called Roe a number of times. Eventually, Roe showed Sherry some correspondence between Roe and Healy and a letter from Healy's wife to Roe. Roe also showed Sherry a videotape of Roe and Healy engaging in sexual relations. After several requests, Roe provided Sherry with copies of the letters. He also told Sherry that he would think about her request for a copy of the video.

Sherry learned the Navy intended to pursue criminal charges against Healy. She then obtained a search warrant for Roe's apartment. During the execution of the search warrant, Sherry and another officer discovered a two-page HIV test report in Roe's bedroom. They turned the front page and read the results, which indicated Roe had tested positive for HIV. Against Roe's protests, the officers seized the report.

The following month, Healy's command decided not to pursue criminal charges against

---

* Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2. Because we affirm the district court's grant of summary judgment, we deny Roe's request for attorney fees under 28 U.S.C. § 2412(d)(1)(A). *See Wang v. Horio*, 45 F.3d 1362, 1363–64 (9th Cir.1995).

him. Instead, Healy was administratively discharged. Roe then brought this *Bivens* action against the officers who executed the search warrant.

In this appeal Roe argues, as he did in the district court, that the search and seizure of his HIV report violated his rights under the Fourth Amendment, and that the seizure and disclosure of the report violated his right to privacy under the Fifth Amendment. He also contends the officers are not entitled to qualified immunity.

## DISCUSSION

### A. Standard of Review

We review de novo the district court's determination that the officers are entitled to qualified immunity and the district court's grant of summary judgment. *Doe v. Attorney General*, 941 F.2d 780, 783 (9th Cir. 1991); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). A fundamental inquiry in a qualified immunity analysis is "whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *see also Allen v. Sakai*, 48 F.3d 1082, 1090 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995).

### B. Search and Seizure of Roe's HIV Test Results

The search warrant for the search of Roe's apartment authorized the officers to search and · seize "one videocassette recording of [Roe] and Michael Healy engaging in oral copulation, ... letters authored by [Roe], letters authored by Michael Joseph Healy, photographs." The officers do not contend the warrant authorized their search or seizure of Roe's HIV report. They contend that while they were lawfully searching Roe's apartment under authority of the search warrant, the HIV report was in plain view, its evidentiary value was apparent, and they lawfully seized it. Roe disputes this. He contends the evidentiary value of the report was not immediately apparent to the officers.

If, during the lawful execution of a search warrant, an officer discovers evidence of a crime in plain view, the officer may seize the object even if the object is not listed in the search warrant. *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 854 (9th Cir.1991). To fall within the plain view exception, two requirements must be met: the officers must be lawfully searching the area where the evidence is found and the incriminatory nature of the evidence must be immediately apparent. *Horton v. California*, 496 U.S. 128, 135–36, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990); *United States v. Ewain*, 78 F.3d 466, 469 (9th Cir.1996).

Roe does not contend the initial intrusion-the search of his apartment-was unlawful. Nor does he contend the officers were searching in areas not authorized by the search warrant. Although Roe asserts the HIV report was in a closed briefcase in his bedroom, and the officers assert the report was in a drawer in Roe's bedroom, this dispute is immaterial. Whether in the briefcase or in the drawer, the officers were lawfully looking in areas where items listed in the search warrant could be found. *See Ewain*, 78 F.3d at 469.

In short, while executing the warrant the officers were where they had a legal right to be, looking where they had a legal right to look. What they saw in plain view was an HIV report. According to Sherry's declaration submitted in support of her summary judgment motion, the front page of the report "bore the notation 'HIV' in large letters and the word 'results' or 'report' or some similar notation." Roe does not dispute this. Although he contends the word "confidential" also was printed on the front page, the record does not support this.

Because the HIV report was found in Roe's bedroom, it was reasonable for the officers to assume the report was his. The question is, was it reasonable for them to believe, as they say they did, that Roe's HIV report was evidence of a crime? We conclude it was.

Roe had told Sherry that, prior to engaging in sexual relations with Healy, Roe had tested negative for HIV. Roe's HIV test results, if subsequent to his sexual relations

with Healy, would be relevant to the question whether Healy had violated the military order for which he was under investigation. If the test results were positive, this would tend to show that Healy had violated the military order. Conversely, if the tests were negative, this could provide evidence that Healy had not violated the order.

The officers also were investigating whether Healy had committed an aggravated assault under 10 U.S.C. § 928(b).[3] The Navy could establish a violation of subsection 928(b)(1) by proving that Healy committed an assault on Roe by "means ... likely to produce death or grievous bodily harm." The HIV virus can produce death or grievous bodily harm. The Navy had evidence that Healy had engaged in unprotected sexual relations with Roe without telling him that he, Healy, had tested positive for HIV. Assuming the Navy presented proof that the HIV virus can be transmitted through unprotected sexual relations, *see United States v. Banks,* 36 M.J. 1003, 1006 (A.C.M.R.1993), if Roe tested positive for HIV after engaging in sexual relations with Healy, this would tend to prove that Healy infected Roe with the HIV virus and could satisfy the "means" element of subsection 928(b)(1). *United States v. Joseph,* 37 M.J. 392, 400 (C.M.A. 1993).

Under subsection 928(b)(2), the prosecution would have to prove that grievous bodily harm actually was inflicted. *United States v. Ricketts,* 1 M.J. 78, 82 n. 5 (C.M.A.1975). If Roe tested positive for HIV, this would tend to show the actual infliction of harm. If, however, Roe tested negative for HIV, the prosecution might not have been able to prosecute Healy under subsection 928(b)(2).

Roe argues this evidence is irrelevant. He contends the Navy could have prosecuted Healy for aggravated assault under 10 U.S.C. § 928(b)(1), but not under 10 U.S.C. § 928(b)(2). This argument lacks merit. As discussed above, Roe's HIV report could provide evidence of an aggravated assault under subsection 928(b)(1).

Moreover, simply because the military previously may have chosen to prosecute people committing similar conduct under subsection 928(b)(1) does not mean the Navy would be precluded from prosecuting Healy under subsection 928(b)(2). If the evidence supported a charge of aggravated assault under subsection 928(b)(2), the Navy would not be barred from seeking a conviction under this subsection. Further, if Healy communicated a fatal disease to Roe, it might be appropriate to prosecute Healy for a crime more serious than aggravated assault. *See Joseph,* 37 M.J. at 396 (stating soldier's willful exposure of HIV to unsuspecting victim may result in prosecution for aggravated assault "or worse").

Thus, Roe's HIV status was a piece of circumstantial evidence relevant to whether Healy had violated the military order, whether he had committed aggravated assault, and whether he had committed a more serious crime. Regardless of whether Roe tested negative or positive, it was immediately apparent to the officers conducting the search that Roe's test results were relevant to the investigation and could provide evidence of a crime. It was also immediately apparent to the officers that the report contained Roe's HIV test results. Under the plain view exception to the warrant requirement, the officers had probable cause to seize the report and examine Roe's HIV test results. Their seizure of the report was proper under the plain view exception.[4] There was no Fourth Amendment violation.

---

**3.** Section 928(b) provides in relevant part:
Any person ... who—
    (1) commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm; or
    (2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon;
is guilty of aggravated assault....
10 U.S.C. § 928(b).

**4.** In view of this conclusion, we need not determine whether the Supreme Court has overruled

our precedent which interprets the immediately apparent prong of the plain view exception as permitting a cursory search of an object based on reasonable suspicion. *Compare Arizona v. Hicks,* 480 U.S. 321, 326–28, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987) (concluding search did not fall within plain view exception because officer did not have probable cause to believe item was evidence of crime) *and Minnesota v. Dickerson,* 508 U.S. 366, 378, 113 S.Ct. 2130, 2139,

## C. Roe's Privacy Interest in His HIV Test Results

■ Roe next argues the officers violated his due process right to privacy by searching, seizing, and disclosing his HIV test results.

"[T]he privacy protection afforded medical information is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Doe,* 941 F.2d at 796. The government may obtain and use medical information if its interest in obtaining the information outweighs a person's interest in privacy. *Id.* The government's interest in obtaining and using the information must advance a "legitimate state interest" and the government's actions must be "narrowly tailored to meet the legitimate interest." *Id.*

To determine whether the search, seizure, and disclosure of Roe's HIV test results violated his right to privacy, we examine the following factors:

the type of [information] requested, ... the potential for harm in any subsequent nonconsensual disclosure, ... the adequacy of safeguards to prevent unauthorized disclosure, [and] the degree of need for access....

*Id.* (quoting *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3rd Cir.1980)).

In the circumstances of this case, the Navy's interest in collecting evidence of a serious crime and in protecting the public clearly outweighed Roe's privacy interest in his HIV test results. We recognize that Roe has a strong interest in protecting the confidentiality of his HIV status. *See Doe,* 941 F.2d at 796. However, by seizing the report, the officers were furthering an investigation into serious crimes. The officers were aware that, beyond Roe, Healy had engaged in unprotected sex with other partners. Healy's conduct presented a fatal risk to the public.

The Naval officers made only a limited disclosure of Roe's HIV status. The results were reported only to Sherry's supervisors and others with "a specific need to know" who were involved in Healy's prosecution. Roe's HIV test results were not disclosed to anyone other than those people directly involved in the investigation and in the potential prosecution of Healy.

Further, the Naval officers took steps to protect the confidentiality of Roe's HIV status. After the Navy decided not to pursue criminal charges against Healy, the original documents seized were returned to Roe and all copies of materials seized were destroyed. There was no Fifth Amendment violation.[5]

## CONCLUSION

The officers did not violate any of Roe's constitutional rights. The district court properly granted summary judgment in their favor.

AFFIRMED.

---

124 L.Ed.2d 334 (1993) (same); *with United States v. Hillyard,* 677 F.2d 1336, 1341–42 (9th Cir.1982) (concluding that, under immediately apparent prong of the plain view exception, officers may conduct cursory search of object based only on reasonable suspicion) *and United States v. Issacs,* 708 F.2d 1365, 1370 (9th Cir.) (same), *cert. denied,* 464 U.S. 852, 104 S.Ct. 165, 78 L.Ed.2d 150 (1983).

**5.** Because we conclude on the merits that there was no violation of Roe's privacy rights, it is unnecessary for us to decide whether our determination that the search and seizure of Roe's HIV test results did not violate his rights under the Fourth Amendment necessarily compels the conclusion that the search and seizure did not violate his privacy rights under the Fifth Amendment.

