P.F., on her own behalf and on behalf of T.F., S.F., and N.F., minor children,

v.

Jean MENDRES and Pat Balasco–Barr, in her capacity as Director of Division of Youth and Family Services.

No. Civ.A. 97–3785 (MLC).

United States District Court, D. New Jersey.

Sept. 29, 1998.

Steven M. Latimer, Loughlin & Latimer, Hackensack, NJ, for Plaintiffs.

Michael W. Kiernan, Deputy Atty. Gen., Dept. of Law and Public Safety, Trenton, NJ, for Defendants.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion by defendants Jean Mendres and Pat Balasco–Barr to dismiss plaintiffs' Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons expressed below, the motion is denied without prejudice to the right of defendant Mendres to raise the issue of qualified immunity in a properly supported motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The motion is granted as to defendant Balasco–Barr, and her successor as the Director of the State of New Jersey Division of Youth and Family Services ("DYFS") is directed to be substituted as a party defendant in this case.

## BACKGROUND

As this motion is premised upon Federal Rule of Civil Procedure 12(b)(6), we must take all factual allegations in the Complaint as true. Accordingly, this factual background is based upon the facts as they are alleged in the Complaint filed in this matter. Plaintiff P.F. is an approved foster mother and special home service provider with DYFS. (Compl. ¶ 2.) At the time the claims arose in August 1995, DYFS had placed two "medically fragile" children with P.F., along with a third child not designated in the Complaint as "medically fragile." Plaintiff N.F. was born in May 1994. (*Id.* ¶ 7.) Shortly after N.F. was born, P.F. expressed an interest in providing a home for the infant N.F. It appears that the other plaintiffs named in this case, S.F. and T.F., are the other children in plaintiff P.F.'s care. N.F. and S.F. are biological siblings, and T.F. and S.F. are HIV positive. (*Id.* ¶ 2–3, 10.)

P.F.'s initial request to provide a home for N.F. was denied by Janice Malec ("Malec"), Central Regional Administrator of DYFS. (*Id.* ¶ 7.) On January 3, 1995, P.F. sought reconsideration of Malec's decision. On May 19, 1995, Eileen Crummy ("Crummy"), manager of the "Adoption Resource Center (ARC)/Central" informed P.F. that her request for reconsideration was denied. (*Id.* ¶ 8–9.)

P.F. immediately sought further review of the decision by requesting a Regional Dispositional Conference/Review. On August 3, 1995, Mary C. McArdle, Administrative Review Officer of the Northern Regional Office of DYFS, notified P.F. that a final agency

decision had been made overturning the May 19, 1995 decision, and placing N.F. in P.F.'s care. (*Id.* ¶ 10.)

Plaintiffs next allege that on August 14, 1995, defendant Mendres, the Deputy Director of DYFS, *sua sponte* notified P.F. by letter that she was reversing the decision of the Dispositional Conference. We will refer to this letter herein as "the August 14 letter." Plaintiffs' Complaint states that the August 14 letter "contained confidential HIV information." (*Id.* ¶ 11.) The Complaint does not state, however, whose HIV information was disclosed.[1] (*Id.*) Other persons to whom the letter was distributed include the following: (1) defendant Balasco–Barr; (2) Malec; (3) Rose Seltzer, a supervisor in the DYFS Office of Adoption Operations and Support; (4) Virginia Coons, a DYFS employee; (5) Donna Youngkins, a subordinate of Rose Seltzer; (6) Joyce Manrazini, the "Law Guardian" of Monmouth County, and (7) Ellen McNamara, an investigator for Manrazini. (*Id.* ¶ 13.) The Complaint further states that "P.F. did not authorize or consent to disclosure of the HIV information contained in the letter." (*Id.* ¶ 14.) Plaintiffs also allege that "on information and belief, the letter was placed in the P.F. case file where it is available to any DYFS employee who has access to the file." (*Id.* ¶ 15.)

DYFS again reversed its decision in January 1996, and allowed N.F. to be placed in P.F.'s foster care. On July 31, 1997, plaintiffs filed a Complaint in this Court, alleging that defendants Jean Mendres ("Mendres") and Pat Balasco–Barr ("Balasco–Barr") violated 42 U.S.C. § 1983, the New Jersey Constitution, and New Jersey state law by disseminating the August 14 letter to various other individuals named in the Complaint. Plaintiffs claim that Mendres disclosed "confidential HIV information" with "no legitimate need" to defendant Balasco–Barr, Maltec, Seltzer, Coons, Youngkins, Manrazini and McNamara. (*Id.* ¶ 18.) Although the Complaint is not a model of clarity, it appears that Count I of plaintiffs' Complaint alleges that defendants are liable under 42 U.S.C. § 1983 for a violation of plaintiffs' right to privacy protected by the Ninth and Fourteenth Amendments to the United States Constitution. (Compl., Count I.) Count II alleges that defendants violated plaintiffs' right to privacy under Article 1, Section 1 of the New Jersey Constitution. (*Id.*, Count II.) Count III alleges that defendant Mendres's dissemination of a letter containing HIV information without plaintiffs' consent violates N.J.Stat.Ann. § 26:5C–7 *et seq.*, and "continues to violate the statute each day the letter remains in the file." (*Id.*, Count III ¶ 26.) Finally, Count IV alleges that Mendres's decision to unilaterally reverse the final agency decision regarding placement of N.F. with P.F. without notifying the prospective foster parent, in the absence of any established procedure permitting such conduct, violated plaintiffs' right to due process under the Fourteenth Amendment to the United States Constitution. (*Id.*, Count IV.) We construe this last claim as one which is pursued under 42 U.S.C. § 1983, but that it is premised upon an alleged constitutional deprivation apart from that which is described in Count I. Plaintiffs seek the following relief: (1) a judgment requiring DYFS to remove the August 14 letter from its files, (2) damages against Mendres in her individual capacity, and (3) attorney's fees and costs. (*Id.*, Relief Requested.)

Defendants Mendres and Balasco–Barr filed a motion to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants make the following arguments in support of dismissal of the Complaint with prejudice: (1) both defendants are entitled to qualified immunity from suit against them in their individual capacity concerning the disclosure of the "confidential HIV information" in the August 14 letter; (2) suit against Balasco–Barr in her official capacity must be dismissed because she is no longer the Director of DYFS; and (3) suit against Mendres in her individual capacity is barred by the Eleventh Amendment.[2]

---

1. For example, the Complaint states that S.F. and T.F. are HIV positive, and that S.F. and N.F. are siblings. The Complaint does not inform the Court of the HIV status of N.F. or P.F.

2. While defendants seek dismissal of the Complaint in its entirety, they provide no argument in support of dismissal as to Counts II, III, and IV.

## DISCUSSION

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) "only if, accepting all alleged facts as true, the plaintiff is not entitled to relief." *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir.1986) (citations omitted). Further, all reasonable inferences that can be drawn from the plaintiff's allegations "must be accepted as true and viewed in the light most favorable to the non-moving party." *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987) (citations omitted).

### A. Dismissal of Count I Based upon Doctrine of Qualified Immunity

█ Count I alleges that Mendres's actions violated plaintiffs' right to privacy which is guaranteed by the United States Constitution. While not specifically designated as such, Count I can fairly be read to assert a claim premised upon 42 U.S.C. § 1983. A person seeking to recover under § 1983 "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Plaintiffs here claim that their right to privacy was violated: (1) by Mendres's dissemination of the August 14 letter which contained confidential HIV information to individuals other than P.F. (the intended recipient), and (2) by the retention of the August 14 letter in plaintiffs' DYFS file.

█ In contrast, defendants argue that Count I of plaintiffs' Complaint must be dismissed against defendants Mendres and Balasco–Barr on the basis of qualified immunity, as Mendres's dissemination of the August 14 letter did not violate any "clearly established" privacy right of the plaintiffs. However, defendants provide no argument regarding the propriety of their retention of the August 14 letter in plaintiffs' DYFS file. We note initially that it appears that defendant Balasco–Barr is sued only in her official capacity and that plaintiffs seek only injunctive relief against Balasco–Barr; plaintiffs do not sue Balasco–Barr in her individual capacity. Thus, our discussion of qualified immunity only applies to plaintiffs' claim against defendant Mendres, as it is clear that Mendres is sued in her individual capacity.[3]

█ Qualified immunity insulates government officials from civil damages liability when the officials' actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow*, the Court explained that a key question is whether "the law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know that the law forbade conduct not previously identified as unlawful.'" *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727.

Generally speaking, "[u]nless plaintiff's allegations state a claim of a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The rationale for this rule rests upon the recognition that one of the purposes of the *Harlow* qualified immu-

---

Therefore we need not address dismissal as to those counts at this juncture.

3. Generally speaking, the doctrine of qualified immunity bars damages suits against public officials acting in their individual capacities. Because plaintiffs have sued Balasco–Barr only in her official capacity and seek only injunctive relief on their claims against her, the doctrine of qualified immunity does not shield her from suit. *See Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Anderson v. Davila*, 125

F.3d 148, 161 n. 13 (3d Cir.1997) (noting that qualified immunity does not apply where only relief sought against defendant is injunctive in nature). Moreover, because plaintiffs do not seek money damages from Balasco–Barr, the Eleventh Amendment does not bar this lawsuit against her in her official capacity. Accordingly, we will discuss defendants' alternative arguments concerning dismissal of plaintiffs' claim against Balasco–Barr in Section B, below.

nity standard is to protect public officials from the "broad-ranging discovery" that can be "peculiarly disruptive of effective government." *Harlow,* 457 U.S. at 817, 102 S.Ct. 2727; *Anderson,* 483 U.S. at 647 n. 6, 107 S.Ct. 3034; *see also Crawford–El v. Britton,* —— U.S. ——, 118 S.Ct. 1584, 1592, 140 L.Ed.2d 759 (1998).

■ Our analysis of the qualified immunity issue will follow the framework set forth by our Court of Appeals most recently in *In re City of Phila. Litig.,* No. 96–2127, 158 F.3d 711, 1998 WL 569362 ("*City of Phila. II*") (3d Cir. Sept. 9, 1998) and *Larsen v. Senate of the Commonw. of Pa.,* 154 F.3d 82, 87 (3d Cir.1998). Those precedents instruct us to first ascertain whether the plaintiffs' Complaint has asserted a violation of a constitutional right at all. *In re City of Phila. Litig.,* 49 F.3d 945, 962 (3d Cir.1995) ("*City of Phila. I*"); *see also Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). If plaintiffs have alleged a violation of a right which is protected by the Constitution in the general sense, we must next engage in a more particularized inquiry which asks if the defendant's conduct violated a constitutional right which was clearly established under the law as of the date the official acted. *See City of Phila. I,* 49 F.3d at 962–64. Necessarily subsumed in this inquiry is whether defendant's actions rose to the level of a constitutional violation. *See In re City of Phila. II,* 158 F.3d 711, 718, 1998 WL 569362 ("The prior panel was therefore required to determine whether the actions of the City officials, as alleged by Ms. Africa, violated her Fourth Amendment right to be free from an unreasonable seizure as that right was understood at the time by reasonable City officials. Inherent in this inquiry is the determination of whether the City Officials' alleged actions rise to the level of a Fourth Amendment violation."); *see also Crawford–El,* —— U.S. ——, 118 S.Ct. at 1594, 140 L.Ed.2d 759 (noting that even where the general rule has been long established, defendant may be entitled to qualified immunity if under the substantive legal doctrine, defendant's conduct was not illegal); *City of Phila. I,* 49 F.3d at 962 (Opinion of Greenberg, J., dissenting in part) (noting that the relevant inquiry in that case was whether plaintiff possessed a clearly established constitutional right to be free from the actions undertaken by defendants to extract plaintiffs from MOVE compound under the circumstances that existed on May 13, 1985). The circuit has further explained that "a court's determination as to whether an official's conduct violated clearly established law must be premised upon an application of the facts as alleged by the plaintiff to the constitutional standards which were clearly established at the time of the official's conduct." *City of Phila. II,* 158 F.3d 711, 718, 1998 WL 569362 (citing *Crawford–El,* —— U.S. ——, 118 S.Ct. 1584 1597, 140 L.Ed.2d 759).

■ If the Court determines that the defendant's conduct rises to the level of a violation of a clearly established right, we must next address whether the defendant is entitled to qualified immunity on the grounds that the defendant, while having violated plaintiff's clearly established rights, was nonetheless reasonable in his or her belief in the lawfulness of the conduct. *See Sherwood v. Mulvihill,* 113 F.3d 396, 398 (3d Cir.1997) ("Only if the plaintiff carries the initial burden [of demonstrating that defendant's conduct violated some clearly established constitutional or statutory right] must the defendant then demonstrate that no genuine issue of material fact remains as to the defendant's 'objective reasonableness' of the defendant's belief in the lawfulness of his actions.").

■ We note initially that we are satisfied that plaintiffs' Complaint alleges a violation of a constitutional right in that plaintiffs allege that their right to privacy, which is protected by the Ninth and Fourteenth Amendments of the United States Constitution, was infringed upon by Mendres's conduct. (*See* Compl.; *see also United States v. Westinghouse Electric Corp.* 638 F.2d 570 (3d Cir.1980).) Thus, we turn our attention to the next step of our analysis, which requires a more particularized inquiry into the alleged right at issue in this case. We observe that in determining whether the law is clearly established, it is not sufficient for a court to ascertain in a general sense that the

alleged right at issue existed; rather, for there to be liability, the right alleged to have been violated "must have been 'clearly established' in a more particularized, and hence more relevant sense." *City of Phila. I*, 49 F.3d at 961. In deciding whether the constitutional right was clearly established, the Third Circuit "require[s] some but not precise factual correspondence between relevant precedents and the conduct at issue." *City of Phila. I*, 49 F.3d at 970; *see also Pro v. Donatucci*, 81 F.3d 1283, 1292 (3d Cir.1996).

This Court, in assessing whether defendant Mendres's conduct violated plaintiffs' clearly established rights, must ask whether the dissemination of the August 14 letter to other individuals named in the Complaint other than P.F. (the intended recipient of the letter) violated plaintiffs' clearly established right to be free from an unreasonable intrusion into their privacy as that right was understood at the time by reasonable DYFS officials. *See City of Phila. II*, 158 F.3d 711, 718, 1998 WL 569362 (discussing inquiry in context of plaintiffs' excessive force claim against city officials). We note parenthetically that it appears that the issue that we confront in this case is one of first impression in this Court and the Third Circuit. We have been unable to locate any Third Circuit precedent specifically applying the doctrine of qualified immunity in a case where the

underlying alleged constitutional violation involves one's right to privacy in medical information.[4]

We conclude that at this juncture, we cannot determine as a matter of law whether or not defendant violated plaintiffs' clearly established right to privacy in the confidential HIV information contained in the August 14 letter. Necessarily subsumed in our inquiry of whether defendant's conduct violated a clearly established right is an analysis of whether defendant's actions rose to the level of a constitutional violation. *See In re City of Phila. II*, 158 F.3d 711, 718, 1998 WL 569362 ("The prior panel was therefore required to determine whether the actions of the City officials, as alleged by Ms. Africa, violated her Fourth Amendment right to be free from an unreasonable seizure as that right was understood at the time by reasonable City officials. Inherent in this inquiry is the determination of whether the City Officials' alleged actions rise to the level of a Fourth Amendment violation."); *see also Crawford–El,* —— U.S. ——, 118 S.Ct. at 1594, 140 L.Ed.2d 759 (noting that even where the general rule has been long established, defendant may be entitled to qualified immunity if under the substantive legal doctrine, defendant's conduct was not illegal); *City of Phila. I*, 49 F.3d at 962 (Opinion of

4. Our research has revealed, however, several cases from other jurisdictions which have analyzed the qualified immunity issue where the underlying right which plaintiffs asserted was "clearly established" was the right to privacy in private medical information. In each case, the court found that the defendants were entitled to qualified immunity based upon three alternative justifications: (1) it was not clearly established that the Constitution afforded a right to privacy in private medical information under *any circumstances;* (2) assuming *arguendo* that such a right existed in the abstract, the defendants' actions did not violate that clearly established right because the intrusion was justified; and (3) further assuming *arguendo* that such a right existed, and that the defendants' conduct violated that right, the defendants' actions were objectively reasonable in light of the observation that the facts of decided cases do not provide sufficient indication of how that right would be balanced against the plaintiffs' privacy interests. *See, e.g., Doe v. Attorney General*, 941 F.2d 780, 796–97 (9th Cir.1991) (because of balancing of interests, there was a legitimate question as to whether disclosure of confidential information violated

plaintiff's privacy rights); *Borucki v. Ryan*, 827 F.2d 836, 848 (1st Cir.1987) (finding that facts of decided cases do not provide sufficient guidance such that reasonable person would know that what was done violated the law); *Williams v. Dept. of Veteran Affairs*, 879 F.Supp. 578, 584 (E.D.Va.1995) (penumbral right of privacy in confidential medical information is far from clearly established); *Thompson v. City of Arlington*, 838 F.Supp. 1137, 1150 (N.D.Tex.1993) (assuming that the plaintiffs' complaint pleaded a violation of some constitutional right to privacy, the defendants' actions were objectively reasonable in light of the law); *Brookins v. Slayton*, 1993 WL 255500 at * 2–3 (N.D.Cal. Apr. 23, 1993) (court held that contours of right to privacy are not clearly established in that: (1) general right to privacy in medical records was not clearly established, but (2) assuming *arguendo* that it was, case law provided insufficient guidance how that right would be weighed against governmental interests); *Plowman v. United States Dep't of Army*, 698 F.Supp. 627, 634 (E.D.Va.1988) (finding that the right to privacy was not clearly established).

Greenberg, J., dissenting in part) (finding that under relevant legal principles, defendants' actions did not amount to a Fourth Amendment seizure of plaintiffs such that no violation of a clearly established right occurred; Judge Greenberg would have ended qualified immunity analysis at that stage of the inquiry). While we are mindful of the Supreme Court's instruction that the qualified immunity inquiry should be decided at the earliest possible stage in the litigation, *see Anderson,* 483 U.S. at 646 n. 6, 107 S.Ct. 3034, *Orsatti v. New Jersey State Police,* 71 F.3d 480, 483 (3d Cir.1995), we cannot determine at this juncture whether defendant's conduct rises to the level of a constitutional violation without the benefit of additional factual information. In reaching our conclusion in this regard, we have reviewed the relevant case law concerning the scope of an individual's right to privacy in certain medical information. As we will explain in more detail below, that analysis requires us to engage in a balancing of the person's privacy interest against the government's need for disclosure of the information. Because the very nature of that analysis requires defendant Mendres to provide evidence concerning her need to disseminate this information to those individuals named in the Complaint, we cannot decide the immunity issue in this case based upon the allegations in the Complaint alone.

■ The Third Circuit has held that an individual has a constitutionally recognized right to privacy in medical records, records of prescription medication and other personal medical information. *See United States v. Westinghouse Electric Corp.,* 638 F.2d 570 (3d Cir.1980); *see also Doe v. SEPTA,* 72 F.3d 1133, 1145 (3d Cir.1995) (individual has right to privacy in prescription information); *FOP v. City of Philadelphia,* 812 F.2d 105, 112 (3d Cir.1987) (certain inquiries in questionnaire concerning the applicant's physical and mental condition implicated privacy interests protected by Constitution, as the information may contain intimate facts about one's body and state of health); *see also Doe v. Barrington,* 729 F.Supp. 376, 382 (D.N.J. 1990) (holding that an individual infected with AIDS virus (and his or her family members) have a constitutional right to privacy in medical information concerning that individu-

al's infection with AIDS). We conclude that the logical import of the relevant precedent is that as of August 1995, the information concerning plaintiffs' HIV status was well "within one of the zones of privacy entitled to protection." *See Westinghouse,* 638 F.2d at 577; *see also Doe v. Attorney General,* 941 F.2d 780, 797 (9th Cir.1991) (information relating to person's HIV status or AIDS diagnosis would fall within the ambit of the privacy protection afforded medical information).

"The decision that the personal medical information ... is entitled to privacy protection merely begins the analysis." *FOP,* 812 F.2d at 110. It is equally clear that as of August 1995, the right to privacy in such intimate medical information was "not absolute." *SEPTA,* 72 F.3d at 1137; *Westinghouse,* 638 F.2d at 577. "Even material which is subject to [constitutional] protection must be produced or disclosed upon a showing of a proper governmental interest." *Westinghouse,* 638 F.2d at 578. our court of appeals has explained: "in recognition that the right of an individual to control access to her or his medical history is not absolute, courts and legislatures have determined that public health or other public concerns may support access to facts an individual might otherwise choose to withhold." *Id.* Indeed our circuit has recognized that as with many individual rights, the right of privacy in one's private medical information must be balanced against important competing interests.

The court in *Westinghouse* developed a multi-factor test to be applied in determining whether there is sufficient justification for the intrusion into one's private matters such that the Constitution is not offended. The court set out the general balancing test as follows:

We must engage in the delicate task of weighing competing interests. The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information it does or might contain, the potential for harm in any subsequent non-consensual disclosure, the injury from disclosure to the relationship in which the record was generated, the ade-

quacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Westinghouse,* 638 F.2d at 577. A shorthand summary of our task here is to balance the individual's privacy expectation, which is embodied in the first five *Westinghouse* factors, against the governmental interest in disclosure, which is embodied in the last two considerations. *See Murray v. Pittsburgh Bd. of Educ.,* 759 F.Supp. 1178, 1182 (W.D.Pa. 1991).

It is the latter part of our inquiry which we cannot complete in the context of a motion to dismiss under Rule 12(b)(6). The latter part of the *Westinghouse* inquiry requires a limited factual determination concerning the reasons for the dissemination of the HIV information. In order to make that assessment, we must have information which indicates: (1) what role each individual who received the letter played in the placement process, and (2) if those individuals had a particular need to know the information contained in the August 14 letter. *See SEPTA,* 72 F.3d at 1142; *Faison v. Parker,* 823 F.Supp. 1198, 1202 (E.D.Pa.1993) (court found that dissemination of plaintiff's HIV information in presentence report was justified because of need to protect inmate's health and determine appropriate foster care placement for her child). Moreover, we have no information concerning what measures, if any, are employed by DYFS officials to prevent unauthorized disclosure of the confidential HIV information. *Roe v. Sherry,* 91 F.3d 1270, 1274 (9th Cir.1996); *Faison,* 823 F.Supp. at 1202. Without this information, we cannot determine if defendant's conduct was justified under the circumstances. *See id.* However, if the proofs demonstrate that the letter was disseminated for a legitimate purpose and given only to those individuals who had a need to know the information, we could then balance the relevant factors and determine the legality of the defendant's conduct.[5] Depending upon the outcome of that analysis, defendant may be entitled to qualified immunity on the basis that defendant's actions in disseminating the letter do not amount to a violation of the right to privacy. *See City of Phila. II,* 158 F.3d 711, 718, 1998 WL 569362.

We do not perceive our conclusion to be inconsistent with the Supreme Court's mandate that the immunity issue be resolved at the earliest possible stage of the litigation. The Court's opinion in *Crawford–El* indicates approval of the possibility that limited discovery may be necessary where the underlying substantive legal theory requires the Court to engage in some factual analysis to determine whether the defendant's conduct rises to the level of a constitutional violation. In discussing the qualified immunity determination that the district court must undertake, the Court observed: "Even where the general rule has long been clearly established (for instance, the First Amendment bars retaliation for protected speech), the substantive legal doctrine on which the plaintiff relies may facilitate summary judgment.... [For example] *there may be doubt as to the illegality of the defendant's conduct (for in-*

---

5. *Defendant argues in her brief in support of this motion to dismiss that the letter was disseminated only to those with a need to know the information. However, we cannot assume the truth of that statement at this juncture, as it is clear that under the standard that we must apply in the context of a motion to dismiss, we must take all of the factual allegations in the Complaint as true. Plaintiffs state in the Complaint that the information was disseminated for no legitimate purpose. (Compl.¶ 18.) If we were to decide the immunity issue at this juncture, we would have to assume that said allegation was true, which would lead to the conclusion that defendant's conduct was not justified under the circumstances. See Doe v. Borough of Barrington,* 729 F.Supp. 376 (D.N.J.1990). *Even at this early* stage in the proceedings, it is clear that plaintiffs have a strong privacy interest in this information. *See SEPTA,* 72 F.3d at 1140 (recognizing that plaintiff had strong privacy interest in prescription information under *Westinghouse,* but that on balance, the defendants' need for disclosure was significant enough to justify disclosure). However, if the proofs demonstrate that there was a significant need for disclosure here, we would then consider whether under the circumstances, there was no privacy violation. Of course, if we were to find that defendant's actions were justified, that determination would require us to dismiss the Complaint against Mendres on the basis of qualified immunity. *See City of Phila. II,* 158 F.3d 711, 718, 1998 WL 569362; *Faison,* 823 F.Supp. at 1202.

stance, whether a plaintiff's speech was a matter of public concern)." *Crawford–El,* —— U.S. ——, 118 S.Ct. at 1594, 140 L.Ed.2d 759 (emphasis added). In a footnote appended to that passage, the Court noted that even where there is doubt as to the illegality of the defendant's conduct, limited discovery may be necessary to resolve that issue. *See id.* —— U.S. ——, 118 S.Ct. at 1594 n. 14. The Court explained: "Discovery involving public officials is indeed one of the evils that *Harlow* aimed to address, but neither that opinion or subsequent opinions create an immunity from all discovery, ... and we have since recognized that limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity." *Id.* —— U.S. ——, 118 S.Ct. at 1594 n. 14 (citation omitted).

█ In light of our conclusion that we cannot resolve the immunity issue at this juncture, we must next address how this particular litigation should proceed. The Supreme Court's opinion in *Crawford–El* teaches that we may tailor discovery narrowly and dictate the sequence of discovery so as to protect the defendant's immunity defense. There the Court explained:

> [The district court] must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings.... Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.... The [district] court should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that defendant actually took, since that defense should be resolved as early as possible.

*Id.* —— U.S. ——, 118 S.Ct. at 1597. Consistent with the Court's mandate, we conclude that there must be some discovery concerning the nature of the actions which Mendres took in disseminating the August 14 letter, her reasons for disclosing the information to those named in the Complaint, and the roles that each of those individuals played in the process of determining the appropriate placement for N.F. Also relevant to our inquiry is whether, and to what extent, DYFS officials

employed adequate safeguards to protect the unauthorized disclosure of this information. *See Sherry,* 91 F.3d at 1274; *see also SEPTA,* 72 F.3d at 1142; *FOP,* 812 F.2d at 118. These factual questions may be explored in an initial discovery phase in which plaintiffs would be permitted to take "only a focused deposition" of Mendres. *Id.*

We must make it clear that this initial discovery phase is limited only to gathering information which bears upon our qualified immunity inquiry. In the context of this case, the initial discovery will be limited to gathering information pertaining to the inquiry that we must undertake in determining if defendant's conduct rises to the level of a constitutional violation of the plaintiffs' right to privacy. *See Westinghouse,* 638 F.2d at 577; *see also SEPTA,* 72 F.3d at 1137; *FOP,* 812 F.2d at 110–11. Of course, once this information is gathered, defendant may file a motion for summary judgment which raises the immunity defense again in light of the factual development gained through this initial discovery phase. Accordingly, we will deny the motion to dismiss without prejudice to the defendant's right to assert a qualified immunity defense in a properly supported motion for summary judgment. *See* Fed. R.Civ.P. 56(c); *see also Johnson v. City of Chester,* 10 F.Supp.2d 482 n. 10 (E.D.Pa. 1998) ("It is significant that defendants assert their claims for qualified immunity in the posture of a motion to dismiss. Although we are required to address these claims as early as possible, ... claims of immunity are normally best analyzed—and therefore undoubtedly revisited—on motions for summary judgment.") (citations omitted).

### B. Plaintiff's Claim against Balasco–Barr in her Official Capacity

█ The only remaining issue presented by this motion to dismiss is whether we should dismiss plaintiffs' claims against defendant Balasco–Barr because she no longer holds the position of Director of DYFS. Plaintiffs correctly point out that Federal Rule of Civil Procedure 25(d)(1) provides that "when a public officer is a party to an action in his official capacity and during its pendency ... ceases to hold office, the action

does not abate and the officer's successor is automatically substituted as a party." (Pls.' Br. in Opp'n at 8.) Here the Director of DYFS would be a necessary party to afford the requested injunctive relief, which is the removal of the August 14 letter from any and all DYFS files. Accordingly, this Court's Order will direct the Clerk of the Court to name Michele K. Guhl, the current Director of DYFS, as a substitute for defendant Balasco–Barr in this case.

An appropriate Order accompanies this Memorandum Opinion.

## ORDER

For the reasons expressed in the accompanying Memorandum Opinion,

**IT IS** on this 28th day of September **ORDERED** that the motion to dismiss (no. 8–1 on the docket) by defendants Mendres and Balasco–Barr be and hereby is **DENIED WITHOUT PREJUDICE** as to dismissal of Count I of the Complaint against defendant Mendres based upon qualified immunity; and

**IT IS FURTHER ORDERED** that the motion to dismiss the Complaint by defendants Mendres and Balasco–Barr (no. 8–1 on the docket) be and hereby is **GRANTED** as to defendant Balasco–Barr because she is no longer Director of DYFS;

**IT IS FURTHER ORDERED** that the Clerk of the Court substitute Michele K. Guhl, the current Director of DYFS, for defendant Balasco–Barr in accordance with Federal Rule of Civil Procedure 25(d)(1), and that the parties reflect the change in the caption of all pleadings and papers subsequently filed with the Court; and

**IT IS FURTHER ORDERED** that the parties contact Magistrate Judge Wolfson for the purpose of coordinating and scheduling the initial discovery phase in accordance with our discussion in the accompanying Memorandum Opinion.