John and Mary DOE, Plaintiffs,

v.

COUNTY OF CENTRE,
et al., Defendants.

No. 4:CV–99–0683.

United States District Court,
M.D. Pennsylvania.

Feb. 1, 2000.

**438**

Stefan Presser, Legal Director, American Civil Liberties Union of PA, Philadelphia, PA, Matthew M. Gutt, Carl G. Roberts, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for plaintiffs.

Gerald J. Geiger, Newman, Williams, Mishkin, Corveleyn, Wolfe & Fareri, Stroudsburg, PA, for defendants.

1. Named as defendants in this action are Centre County; Centre County Office of Children and Youth Services ("CYS")' Board of Commissioners of Centre County; Terry Watson, individually and in his official capacity as the Director of Centre County CYS; Carol Smith, individually and in her official capacity as the Assistance Director Administrator of the Centre County CYS; and Lisa Rice, individually and in her official capacity as a Foster Home Specialist of the Centre County CYS.

2. The court notes the case of *Kimel v. Florida Board of Regents*, —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) in which the United States Supreme Court held that states may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

On April 28, 1999, plaintiffs John and Mary Doe commenced this action against various defendants[1] with the filing of a complaint pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[2]; section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 794; Title IV of the Civil Rights Act of 1964 ("Title IV"); and 42 U.S.C. § 1983. Plaintiffs allege, *inter alia,* that defendants violated their civil rights by excluding plaintiffs from participation in the foster care program run by Centre County because of the disability of plaintiffs' son and on account of plaintiffs' race. *See* Complaint at ¶ 1.

Defendants filed a motion to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. By order dated October 13, 1999, this court converted defendants' motion to a motion for summary judgment pursuant to Rule 12(b), noting that defendants' motion and supporting brief referenced matters outside of the complaint. The order set forth a supplemental briefing schedule for both parties to address the matters outside of the complaint raised in defendants' motion.

to a legitimate state interest. *Kimel,* —— U.S. ——, 120 S.Ct. 631, 645, 145 L.Ed.2d 522 (2000). In light of this recent Supreme Court decision, we find it incumbent to point out that the ADA may not be "appropriate legislation" under § 5 of the Fourteenth Amendment, and therefore Congress may not have constitutionally abrogated states' sovereign immunity in enacting the ADA. The Supreme Court will probably resolve this issue shortly, as it recently granted certiorari in *Alsbrook v. Arkansas,* —— U.S. ——, 120 S.Ct. 1003, —— L.Ed.2d —— (2000) consolidating the same with *Florida Department of Corrections v. Dickson,* —— U.S. ——, 120 S.Ct. 976, —— L.Ed.2d —— (2000). The issue has not been considered in deciding the instant motion, as it has neither been raised nor briefed.

This matter is now fully briefed and ripe for disposition. For the reasons which follow, we will grant defendants' motion.

In addition, plaintiffs filed a motion for reconsideration of the October 13th order, and brief in support thereof. Although defendants have not responded to the motion, and the time has passed for defendants to file a timely response, the court will proceed to deny plaintiffs' motion on the merits.[3]

## DISCUSSION

### I. Reconsideration Standard

■■■ The federal rules allow a party to move to alter or amend a judgment within ten (10) days of its entry. FED.R.CIV.P. 59(e). According to the Third Circuit, "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). However, where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration. *Id.* at 909 (citing *DeLong Corp. v. Raymond Int'l Inc.,* 622 F.2d 1135, 1139–40 (3d Cir.1980)). Accordingly, reconsideration motions will be granted only where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises. *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995). Reconsideration of judgment is an extraordinary remedy; therefore, such motions are to be granted sparingly. *NL Industries v. Commercial Union Ins.,* 935 F.Supp. 513 (D.N.J.1996) (citing *Maldonado v. Lucca,* 636 F.Supp. 621, 630 (D.N.J. 1986)).

### A. No Manifest Error of Law

■■■ Plaintiffs contend that "the Court's decision to convert defendants' motion con-

stitutes a manifest error of law which will result in manifest injustice to plaintiffs." Plaintiffs' Supplemental Opposition Brief at 5. Plaintiffs base this argument on the proposition that both parties have conducted little or no discovery. *Id.*

We disagree. In fact, as set forth in defendants' supplemental supporting brief, the court indicated at the hearing on the motion for preliminary junction that it was likely that all the evidence presented on that day would be comprehensive with respect to the disposition of the case.

The court finds that the evidence introduced at the day long hearing is a sufficient basis for a motion for summary judgment. Indeed, it would be disingenuous for plaintiffs to assert that "little or no discovery" has taken place in light of the statistics, documents and testimonial evidence produced by both parties at the hearing. While a trial court should not generally convert a motion to dismiss to a motion for summary judgment where there has been little or no discovery "because the parties may not be able to present enough material to support or oppose a motion for summary judgment," *Owens v. Hahnemann University, et al.,* Civ.A. No. 9404654, 1995 WL 392516 at *2 (E.D.Pa. June 27, 1995), the court finds that the factual record is sufficiently developed for the purposes of a summary judgment motion, as there are no material facts yet to be discovered.

In sum, it is our belief that conversion of the motion to dismiss to a motion for summary judgment is proper and will facilitate an appropriate disposition of this matter.

Accordingly, we will deny plaintiffs' motion for reconsideration. We will now proceed to analyze the merits of the motion for summary judgment.

### II. Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to inter-

---

**3.** The court notes that defendants in their supplemental supporting brief do not oppose the conversion of the motion. Defendants also address reasons for which they believe plaintiffs' opposition to the conversion to be improper.

rogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed. R.Civ.P. 56(c) (emphasis added).

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex* at 323, 106 S.Ct. 2548. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex* at 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–694 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson* at 248, 106 S.Ct. 2505. The court may not weigh the evidence or make credibility determinations. *Boyle v. Coun-*

*ty of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Boyle* at 393; *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir.1988).

If the moving party satisfies its burden of establishing a prima facie case for summary judgment, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. *Boyle* at 393 (quoting, *inter alia, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### III. Statement of Material and Undisputed Facts

In contravention of LR 56.1 of the Local Rules for the Middle District of Pennsylvania, defendants failed to file a "separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LR 56.1.

In our order dated August 30, 1999 denying plaintiffs' motion for a preliminary injunction, the court set forth 116 findings of fact. *See* Order dated August 30, 1999 at 3–19. As the motion for preliminary injunctive relief arises out of the same set of facts as the motion for summary judgment, we will deem those facts to be material and undisputed which are set forth as findings of fact in our August 30th memorandum, and the same are incorporated herein by reference; provided, however, that findings of fact numbered 17, 51, 54 and 80 have been excluded in deciding the instant motion as either immaterial to our discussion, or subject to dispute.

### A. Direct Threat

Plaintiffs contend that in the event the court denies their motion for reconsideration, we should grant a continuance pursuant to Fed.R.Civ.P. 56(f) until plaintiffs have had the opportunity to conduct ap-

propriate discovery relating to the material fact issues raised by defendants. *See* Plaintiffs' Supplemental Opposition Brief at 9.

However, as previously stated, the court does not believe there is a need for further discovery on any or all material issues raised in defendants' motion for summary judgment. John and Mary Doe have submitted an affidavit which states a need for extensive discovery "to address defendants' direct threat, qualified immunity and ripeness claims." Plaintiffs' Supplemental Opposition Brief at 10, citing Doe Affidavit, attached thereto as Exhibit A.

■ With respect to the direct threat allegation, the court finds that based on the evidence presented at the June 22, 1999 hearing, and affidavit submitted by the Does, there is no genuine issue of material fact as to the presence of a direct threat to a foster child placed in the Doe home. According to 42 U.S.C. § 12182(b)(3),

> [n]othing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a *direct threat to the health or safety of others.* The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services.

42 U.S.C. § 12182(b)(3) (emphasis added).

Likewise, the exception to the Rehab Act provides as follows:

> For the purposes of sections 793 and 794 of this title, as such sections relate to employment, such term does not include an individual who has a currently contagious disease or infection and who, by reason of such disease or infection, would constitute a *direct threat to the health or safety of other individuals* or who, by reason of the currently conta-

gious disease or infection, is unable to perform the duties of the job.

29 U.S.C. § 706(8)(D) (emphasis added).

The Supreme Court in *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) set forth four factors to determine the presence of a "significant risk" to the health and safety of others. These factors are as follows:

> [findings of] facts, based on reasonable medical judgments given the state of medical knowledge, about (a) the nature of the risk (how the disease is transmitted), (b) the duration of the risk (how long is the carrier infectious), (c) the severity of the risk (what is the potential harm to third parties) and (d) the probabilities the disease will be transmitted and will cause varying degrees of harm.

*Arline,* 480 U.S. at 288, 107 S.Ct. 1123 (quoting Brief for American Medical Association as Amicus Curiae at 19).

This court in our August 30th order weighed each of these four factors against the evidence presented at the preliminary injunction hearing. In doing so, we held that there is a high probability that HIV may be transmitted to children placed in foster care with the Does. *See* Order dated August 30, 1999 at 26. This court relied on statistical evidence offered by defendants at the hearing on the motion for preliminary injunctive relief. We reiterate:

> As of March 31, 1999, CYS had 125 children in placement. Of those children:
>
> (a) 49% (61 children) had behavioral or emotional problems,
>
> (b) 24% (30 children) had been victims only of sexual abuse;
>
> (c) 5% (6 children) were perpetrators only of sexual abuse; and
>
> (d) 7% (9 children) were both victims and perpetrators of sexual abuse.

*Id.* The court went on to state that "... it appears that there is evidence from which

defendants can make an objective determination of the existence of a direct threat to foster children placed in the Doe home ..." *Id.* at 27. Viewing the evidence and all reasonable inferences made therefrom in the light most favorable to plaintiffs, we do not believe that any reasonable jury could find defendants liable under the ADA and Section 504 of the Rehab Act.

Plaintiffs go to great lengths in their supporting brief to detail the information they need to attain in order to respond appropriately to defendants' direct threat allegations. Plaintiffs' Supplemental Opposition Brief at 10. However, we do not believe that the information plaintiffs wish to seek through further discovery is germaine to the disposition of defendants' motion. Even if plaintiffs had the opportunity to conduct further discovery, the proffered facts that they wish to uncover would not create a genuine issue of material fact for the jury to decide. For example, plaintiffs wish to obtain the following information:

the actual incidence of forcible sexual intercourse perpetrated by CYS foster children in private foster homes over the past several years; the ages of those foster children at the time that they committed forcible sexual intercourse; the genders of those same foster children; the individual circumstances surrounding each incident of forcible sexual intercourse; whether those children had committed single or multiple acts of sexual abuse; the dates of all such incidents of sexual abuse by those foster children; the individual assessments that defendants undertake of each foster child to attempt to identify potential sexually abusive foster children and the methods employed to reduce the possibility of sexual abuse by foster children in private foster placements as opposed to group home settings; whether the increased level of supervision in private foster homes versus group homes reduces the risk of sexual abuse; and the potential modifications that CYS could make to its existing policies and procedures in order to better identify known or potential abusers.

*Id.* at 10–11.

Assuming *arguendo* that plaintiffs had an opportunity to uncover these items, it would not create a genuine issue of fact as to the probability of HIV transmission in the Doe home and the resulting existence of a direct threat. Indeed, the court does not believe that any of these facts, if uncovered, would be material to a reasonable jury's decision.

Moreover, plaintiffs contend that the affidavit of Frank Cervone, Executive Director of the Support Center for Child Advocates in Philadelphia, Pennsylvania, creates a genuine issue of material fact as to the direct threat issue. We disagree.

Cervone's affidavit states in pertinent part that reported cases involving sexual abuse by foster children encompass a range of activities, many of which would pose no risk of possible HIV transmission. Cervone Affidavit at ¶ 8, attached as Exhibit B to Plaintiffs' Supplemental Opposition Brief. However, Cervone offers no medical or statistical evidence to back up his assertion.

Cervone also states that responsible foster care agencies have the responsibility to attempt to identify all children who present a risk of sexually aggressive behavior. *Id.* at ¶ 9. Thus, plaintiffs suggest that those children who are at risk for being sexually aggressive "would not be considered for placement with the Does to begin with and could not present a risk of sexual abuse to AJB." Plaintiffs' Supplemental Opposition Brief at 15. However, plaintiffs ignore this court's finding that "CYS cannot identify with any certainty at the time of placement which of its foster children will engage in assaultive behavior or those children who will be sexual perpetrators." Order dated August 30, 1999 at 27. Moreover, we reiterate this court's consideration of AJB's mental and physical deficiencies:

Indeed, AJB's communicative skills are limited, and the court questions his ability to communicate the occurrence of inappropriate sexual contact from foster children placed in the Doe home. More significantly, the court questions AJB's ability to fend off inappropriate sexual behavior in the absence of one of his parents.

*Id.* at 27–28. Therefore, Cervone's affidavit fails to create a genuine issue of material fact in this regard.

Cervone also contends that there are steps to reduce the risk of "insertive sexual intercourse occurring in the foster home," such as sex education, HIV/AIDS education, counseling and close supervision. *See* Plaintiffs' Supplemental Opposition Brief at 15. However, Cervone's assertion fails to take the facts of this case into consideration. While sex education and counseling may be the answer in other foster care situations, the court again reiterates its concerns regarding AJB's mental and physical deficiencies. It is unlikely that AJB possesses the skills needed to comprehend any form of sex education or counseling. Moreover, by Jane Doe's own admission at the hearing, neither she nor her husband are always present in the same room with AJB and his brother, MJB. In fact, the Does utilize an electronic monitoring system to monitor the childrens' actions. *See* Findings of Fact at ¶ 86 (August 30, 1999 order).

Lastly, plaintiffs rely on the affidavit of Dr. Swenson, who testified at the preliminary injunction hearing and was qualified as an expert in the treatment and prevention of AIDS. According to Dr. Swenson, the risk that AJB would transmit AIDS to a foster child who forced AJB to perform oral sex upon him is negligible; the risk of transmission to that same child who performed insertive intercourse upon AJB is approximately 1 in 1,666 incidents; and that this remote risk is reduced even further if the infected victim, like AJB, has low or undetectable viral loads. *See* Plaintiffs' Supplemental Opposition Brief at 16.

However, as we stated in our August 30th order, "[t]he court is unaware of any way of assuring that contact between AJB will be indeed casual." Order dated August 30, 1999 at 28. By Dr. Swenson's own assertion, "[t]he risk of transmission of HIV through sexual contact varies significantly based on the type of contact, the specific roles taken by the HIV-infected partner in the particular sex act, and whether a condom or other carrier is used." Affidavit of Dr. Swenson at ¶ 3, attached as Exhibit C to Plaintiffs' Supplemental Opposition Brief. It is the existence of this uncertainty that the court finds material in light of *Arline*. Plaintiffs have not offered any evidence that creates a genuine issue as to the existence of a direct threat to foster children placed in the Doe home. Moreover, the court does not believe that the facts plaintiffs wish to uncover create any genuine issue of material fact in this regard.

As a side note, we must address plaintiffs' remaining argument regarding the direct threat issue; that is, that defendants have not proven that no reasonable accommodation exists. *See* Plaintiffs' Supplemental Opposition Brief at 21. We believe plaintiffs' argument is inherently flawed. First, reasonable accommodations exist on the face of the Policy:

C) **Placement of Children With Serious Infectious Diseases** [CYS] will approve specific foster homes for placement of children with serious infectious diseases and will assure that the caregiver is given the necessary medical and other training needed to meet a child's specific condition. If a child with a serious infectious disease is placed in a foster home, or if there is a family/household member of the foster family who has a serious infectious disease, *only children with the same serious infectious disease will be considered for placement in that home.* The only exception to this policy would be for a parent/guardian of a child in the care and custody of [CYS] to sign an in-

formed consent for the placement of their non-infected child in such a home. (See attached Placement Consent.) For this exception to occur, *the foster parents would have to voluntarily agree to release information to the child's parents that a member of the foster family/household has been diagnosed with a specific serious infections disease.* (See attached Foster Parent Consent to Release Medical Information.)

*See* Policy (emphasis added); *see also* Findings of Fact (August 30, 1999 order) at ¶ 50.

Therefore, it appears that defendants have offered reasonable accommodations; that is, the placement of a child with the same serious infectious disease as AJB, or a signed informed consent from the biological parent of the foster child. Plaintiffs cannot contend that defendants have not offered reasonable accommodations simply because they disagree with them.

Notwithstanding the language of the Policy, the court believes that based on the evidence presented at the hearing, there is insufficient evidence from which a jury could determine whether other reasonable accommodations could be made in this instance. Although their supplemental opposition brief is replete with bald assertions, plaintiffs have produced no evidence in the form of affidavits or deposition testimony that indicates a reasonable accommodation exists.

Therefore, in light of the above, the court finds that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law as to the ADA claims and Rehab Act claims.

### B. Qualified Immunity

Plaintiffs contend that the evidence submitted at the preliminary injunction hearing creates a genuine issue of material fact regarding defendants' qualified immunity defense. *Id.* at 22. We disagree.

The "qualified immunity" defense for public officials was first upheld in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727,

73 L.Ed.2d 396 (1982), and *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As stated by the United States Supreme Court:

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow,* 457 U.S. at 818, 102 S.Ct. 2727 (citations omitted).

The determination of whether qualified immunity applies should be made as early in the litigation as possible. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). "Unless plaintiff's allegations state a claim of a violation of a clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *P.F. v. Mendres,* 21 F.Supp.2d 476 (D.N.J.1998) (quoting *Anderson,* 483 U.S. at 635, 640 n. 6, 107 S.Ct. at 3034); *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). If there are no genuine issues of material fact, the application of qualified immunity is a question of the law for the court to decide. *Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir.1995).

■ According to the Third Circuit, the district court must "ascertain whether a constitutional violation has been alleged before determining if qualified immunity is available." *Miller v. City of Philadelphia,* 174 F.3d 368, 374 (3d Cir.1999) (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Larsen v. Senate of the Commonwealth of Pa.,* 154 F.3d 82, 86 (3d Cir.1998)). If the conduct alleged by plaintiff violated a clearly established principle of constitutional or statutory law, the court goes on the ask "whether the unlawfulness of the action would have been apparent to an objectively reasonable official." *McNeil v. Koch,* No. Civ.A. 98–4578, 1999 WL

729263, at *5 (E.D.Pa. Sept.15, 1999) (citing, *inter alia, Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir.1997); *Rouse v. Plantier,* 182 F.3d 192 (3d Cir.1999)). An officer's subjective intent in carrying out the challenged action is immaterial to the resolution of questions concerning qualified immunity. *See Johnson v. Horn,* 150 F.3d 276, 286 (3d Cir.1998). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objectively legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson,* 483 U.S. at 639, 107 S.Ct. 3034.

■ Plaintiffs in their supplemental opposition brief state that they have presented extensive arguments countering defendants' qualified immunity claims in their initial opposition brief, and that they incorporate those arguments by reference. Plaintiffs' Supplemental Opposition Brief at 22. However, this argument is flawed since the basis for plaintiffs' discussion in their original opposition brief was that "plaintiffs have sufficiently alleged that defendants acted unreasonably in creating and implementing the disclosure and waiver policy." *Id.* We agree with defendants that plaintiffs have not satisfied the first hurdle of the test set forth by the Third Circuit, that is, that defendants' challenged conduct violates a clearly established principle of constitutional or statutory law.

We agree that there are no cases from the Third Circuit which address the duty of care that a public agency must exercise when placing children into foster homes. The situation presented here differs from cases dealing with the rights of AIDS victims in places of public accommodations. We agree with defendants that CYS must consider the best interest of the foster children in placing them in foster homes. We further agree that many placement decisions must be made quickly, and that it is not always possible to assess a child's propensity towards sexual aggressiveness.

With this in mind, it follows logically that CYS can never accurately assess the risk of AIDS transmission in a foster home in which a child, such as AJB, resides.

Moreover, we are aware of no case law regarding the legal responsibilities of a placement agency when foster children are at risk of contracting AIDS in a foster home setting. *See* Defendants' Original Reply Brief at 7. In fact, plaintiffs cite to no such case law in their opposition brief, but rather cite to cases we find inapposite here, since they do not deal with the direct threat we hold exists in a foster home situation with an HIV-infected household member with the mental capacity of AJB. *See* Plaintiffs' Original Opposition Brief at 16–17 and cases cited therein: *St. Hilaire v. Arizona Dep't of Corrections,* No. 90–15344, 1991 WL 90001, 1991 U.S.App. LEXIS 11620 (9th Cir.1991) (prisoner with AIDS cannot be prohibited from sharing a cell with another prisoner); *Martinez v. School Board of Hillsborough County,* 861 F.2d 1502, 1506 (11th Cir.1988) (student with AIDS cannot be isolated from classmates); *Chalk v. United States District Court,* 840 F.2d 701, 707 (9th Cir.1988) (teacher could not be transferred from classroom because of HIV status); *Support Ministries for Persons with AIDS, Inc. v. Village of Waterford,* 808 F.Supp. 120, 136–37 (N.D.N.Y.1992) (residence for homeless persons with AIDS posed no threat to safety of community residents).

Therefore, we find that plaintiffs cannot overcome defendants' qualified immunity defense by showing that the challenged conduct violated rights that were clearly established at the time the conduct occurred. In sum, the court finds that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law on the basis of qualified immunity.

### D. Punitive Damages

■ We agree with defendants that they are immune from any punitive damages award. According to the United

States Supreme Court, a municipality is immune from punitive damages under 42 U.S.C. § 1983. *Reitz v. Persing,* 831 F.Supp. 410 (M.D.Pa.1993) (citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981)). "Concerned with burdening the taxpayer with punitive damages imposed against a municipality, the Supreme Court found that 'considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith acts of its officials.' " *Id.*

Therefore, the County of Centre and Centre County CYS are immune from any claims for punitive damages.

■ As for the individual defendants, we do not believe that any claim for punitive damages may be recovered because plaintiffs have neither alleged nor produced evidence that defendants' conduct was outrageous. *See* Qualified Immunity, *supra* at § C.

Therefore, the individual defendants are immune from any claims for punitive damages.

### E. Race–Based Claims

Lastly, as for plaintiffs' race-based claims, we agree with defendants that such claims are not ripe for adjudication. We reiterate the pertinent section of our August 30, 1999 memorandum:

> ... We find it noteworthy that defendants have not yet reached their final decision regarding plaintiffs' foster parent application. As such, no foster child has been referred to plaintiffs, nor has any referral been denied to plaintiffs on the basis of race or any basis whatsoever. Moreover, plaintiffs' testimony regarding racial discrimination was rebutted by testimony from Carol Smith and Lisa Rice of CYS. Both defendants denied relating to plaintiffs that CYS would not consider placing a white child in their home.
>
> As there is no evidence that any child was referred to the Does or that the Does were denied any referrals, the court finds plaintiffs' race-based claims of discrimination without merit.

Order dated August 30, 1999 at 20.

Therefore, because the Does' foster parent application has not yet been approved, their race-based discrimination claims are not ripe for adjudication.

### CONCLUSION

For the reasons stated herein, the court finds that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. Accordingly, we will grant summary judgment in favor of defendants as to all claims.

An appropriate order will issue.

### *ORDER*

For the reasons stated in the accompanying memorandum, **IS IT ORDERED THAT:**

1. Plaintiff's motion (record document no. 36) for reconsideration of the court's October 13, 1999 order, is denied.

2. The court's October 13, 1999 order is hereby affirmed.

3. Defendants' motion (record document no. 23) to dismiss, converted by this court to a motion for summary judgment, is granted.

4. The clerk is directed to enter final judgment as to all claims in favor of defendants and against plaintiffs.

5. The clerk is directed to close the file.

IT IS ORDERED AND ADJUDGED that judgment as to all claims is entered in favor of all Defendants and against the Plaintiffs.